PALATKA AND INDIAN RIVER RAILROAD COMPANY, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Motions for a new trial or in arrest of judgment cannot be made after the term of the court at which the trial was had.

2. No agreement between parties or counsel as to a trial of a cause is of any effect before the court, unless the evidence of it is in writing and subscribed by the party, or his attorney, against whom it is alleged, or is made in open court and noted by the judge in his minutes. Com. Law Rule, 43.

3. The statutes of this State prescribing the powers and duties of railroad companies as to highways do not affect the rules of pleading controlling indictments for obstructing a highway, further than to require that the act charged to be such obstruction shall appear to be an act which is not authorized by such statutes.

4. The allegation in an indictment that the road described was and is "a common highway in Putnam county, made and laid out for the people of this State to go, return and pass at their free pleasure and will on foot, on horseback and in vehicles," is equivalent to an allegation that the road was and is an "established highway," under the statute punishing the obstruction of any public road or established highway and providing for the removal of the obstruction.

5. Where an indictment against a railroad company under the above statute shows a complete obstruction of the highway against travel so as to prevent the people from traveling the same, it is good in law. No such privilege is given by the statutes to railroad companies.

6. An indictment against a railroad company for constructing its road across or upon a highway at a point outside of the authorized route of the railroad should affirmatively show that the railroad is outside of such route.

7. A grant to a railroad company of the right to construct its road along, upon or across, or to use an existing highway, is not to be construed as a power to destroy the highway. This is the rule of construction unless the language of the grant is such as to show unmistakably an intention to grant such power.

8. A grant of the power to cut through a highway is, in the absence of an express provision to the contrary, impliedly attended by an obligation to furnish to the public a safe crossing.

. Our statute does not give to railway companies the power to construct their roads across or along highways in such a manner as to block up and permanently obstruct the same, so that it cannot be used by the public while the trains are neither passing over it nor otherwise properly using their tracks.

10. The provisions of the statute, including those as to carrying a highway which may be touched, intersected or crossed by a railroad, under or over the railroad track, "as may be found most expedient for the public good," and as to making a change in the line of the highway where an embankment or cut calls for it, or it is desirable with a view to a more easy ascent or descent, and the grant of authority to the railroad company to acquire additional land for the construction of the road or highway on the new line, were intended to preserve to the public the old highway on the original surface or on a new surface, or a new highway on the new line.

11. The meaning of these provisions in so far as they relate to the manner of the construction of the railroad (independent of any questions which may arise as to the use or operation of it) is nothing more than that when the conditions of locality or topography are such that the railroad and highway cannot cross or intersect, on the same surface, the railroad company may pass the highway over the railroad or under according as the former or latter shall be more for the public good; and, furthermore, if it be that the conditions are such as not to permit, consistently with its practical use, the grading of the highway to the level of the railroad cut or embankment, to authorize a detour or change in the route of the highway.

12. This new route or detour in the highway, after being established upon land to be acquired by the company, is to be maintained as other public highways, and to be open as a public highway and not as a private road of the company.

13. The power given by the statute to the company when its road intersects or crosses a highway includes the power to alter the grade of the highway, provided it is so done as not to substantially impair the usefulness of the highway.

14. If there be a cut or embankment, and the level of the highway is graded down or up to the surface of the railroad track in such cut, or on such embankment, and this is done in such a manner and at such an angle of descent or ascent as not to work any substantial detriment to either persons or vehicles traveling the highway, the company in so doing does not transcend its powers or duties as to such highway.

15. Where the topography of the country is such that the cut or embankment makes a change of the line of the highway either necessary or desirable, "with a view to a more easy ascent or descent," the change may be made.

16. Where the railroad passes *along* instead of across the highway, it must be so constructed as not to destroy or obstruct the latter, or prevent its use by the public.

17. In cases of nuisance, each judgment should be adapted to the nature of the nuisance of which the defendant may be convicted. The judgment should not be inconsistent with the legal rights of the party convicted, whatever they may be.

18. When a railroad company is indicted for wilfully obstructing a highway, and the obstruction is one whose illegality is attributa-

ble to the manner in which its railroad has been constructed upon the highway, and, upon conviction, the judgment is so framed as to require an absolute removal of the constituent elements of the roadbed from the highway, and not to permit the company to abate the nuisance, or "remove the obstruction," by grading the highway to the surface of the railroad track, or by carrying the highway under or over the railroad, or by changing the line of the highway, or by carrying the railroad along and upon the highway on the surface of the latter, or in such other manner as not to obstruct it, or to prevent its use by the public, according as one or the other of these courses may, under the circumstances of the case, be proper, it is erroneous, and should be set aside and the cause remanded for a reformation of the judgment.

19. In the absence of a bill of exceptions it will be assumed that the testimony was of such character as to sustain the verdict.

Writ of Error to the Circuit Court for Putnam county.

The indictment in this case was found November 20, 1885, and charges that the road described as leading from Brown's Landing, on the St. Johns river, to the city of Palatka, and known as the Brown's Landing road, was, at the time of the committing of the alleged nuisance, and yet is, a common highway, in Putnam county, in this State, made and laid out for the people of this State to go, return and pass at their free pleasure and will, on foot, on horseback, and in vehicles, and "that on the first day of July, A. D. 1885, the Palatka and Indian River Railway Company, a corporation existing under and by the laws of Florida, did wilfully obstruct said highway by then and there digging ditches, throwing up embankments and placing cross ties and iron rails on and in said common highway in front of the property of William Conrad, Dr. Anthony Schaffranack, F. A Garrison and William Thompson, in the county and State aforesaid, and now do obstruct the said highway in manner and form as aforesaid, by

which the common highway as aforesaid is so obstructed and stopped that the people of the said State cannot go and travel in and through said highway as they were wont and ought, to the great damage and public nuisance against the form of the statute," &c.

At the Spring term, 1886, of Putnam County Circuit Court, there was a trial by jury and a verdict of guilty, and a judgment of the court " that the defendant be fined one hundred dollars, and that the obstructions complained of in the indictment on the Brown's Landing road or highway, and proved, to-wit: the embankment, ditches, crossties and iron rails, be removed from said highway by the defendant."

The other facts of the case are stated in the opinion.

*Alfred Bishop Mason* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MR. JUSTICE RANEY delivered the opinion of the court:

I. This case is brought here by writ of error. There was no motion for a new trial, or in arrest of judgment, made until after the term. The motion so made was properly overruled. Such motions cannot be made after the term. Sec. 1, p. 453 Mc.'s Digest.

It is unnecessary to say more in regard to the disagreement of counsel over their conversation or alleged verbal understanding as to when the trial in the Circuit Court should take place, than that no agreement between parties or counsel, as to a trial of a cause, is of any effect before the court unless the evidence of it is in writing and subscribed by the party (or his attorney) against whom it is alleged or is made, in open court and noted by the judge in his minutes. Cir. Ct. Com. Law Rule 43.

II. There is no bill of exceptions, and the only assignments of error to be considered relate to the record proper.

It is urged that the indictment does not accuse the defendant of any crime.

The statute (sec. 8, p. 428 Mc.'s Digest) provides that if any person or persons within this State shall obstruct any public road or established highway, by fencing across or into the same, every such person or persons who shall build any such fence, or wilfully cause any other obstruction in such road or highway or any part thereof, shall be liable to be indicted, and on conviction thereof shall be fined in a sum not exceeding one hundred dollars, at the discretion of the court ;. and the judgment of the court shall be that the obstruction be removed.

The indictment is founded upon this statute.

It is urged that the indictment is insufficient in that it does not allege that the road is a "public road," or "an established highway." In indictments at common law the expression the King's or Queen's "common highway, used for all the liege subjects * * * with their horses, coaches, carts and carriages to go, return, pass, repass, ride and labor," is used. We think the allegation of the indictment before us, that the road described was and is "a common highway in Putnam county, in this State, made and laid out for the people of this State to go, return and pass at their free pleasure and will on foot, on horseback and in vehicles," is equivalent to either that of the common law form, or to an allegation under the statute that it was and is an "established highway." It is not necessary to use the exact language of the statute, words of equivalent import are sufficient.

We have considered the question whether the indictment shows an unlawful, as well as a wilful obstruction of the highway, and our conclusion is that it does, for its

meaning is that the obstruction is such as to prevent the people from traveling the highway, or, in other words, it shows a complete obstruction of the highway against travel. The statutes of this State, prescribing the powers and duties of railroad and canal companies as to crossing highways, do not affect the rules of pleading controlling indictments for obstructing a highway further than to require that the act alleged and charged to be such obstruction, shall appear to be an act which is not authorized by such statutes. They do not authorize a simple and absolute closing of the highway against travel, as is alleged here. Our views on this subject will appear more fully in the discussion of the judgment in this case.

III. It is contended that the statute providing for establishment of public roads in this State is unconstitutional because it forbids compensation for taking private property. Section 7, p. 899 McO.'s Digest, which provides that nothing shall be allowed to any person whose "*unimproved lands*" a road may pass through ; and section 2, p. 898, which authorizes the supervisor of a road to use material adjacent to the road for building or repairing the same are cited. In the absence of the bill of exceptions, we must assume that it was shown upon the trial that, as against the plaintiff in error, the road was lawfully established. The lands may have been "improved lands," and satisfactory compensation have been made under the statute, or by agreement, to the person owning them when the road was established. The question covered by the second section is not involved under the indictment.

IV. The indictment shows that the Palatka and Indian River Railway Company is a corporation existing under the laws of Florida. No judgment inconsistent with its rights as such should be permitted ; and, consequently, a consideration of the rights of a railroad corporation as to

a road or highway is necessary in order to determine the correctness of the judgment before us, which judgment requires an actual removal of the railroad from the highway.

Our statute, by section 10, p. 277, McC.'s Digest, *empowers* a railroad company to construct its road across, along or upon, or to use any street or highway which the route of its road shall intersect or touch, and provides that whenever the track of any railroad shall touch, intersect or cross any road, highway or street, that such road, highway or street may be carried over or under the railroad " as may be found most expedient for the public good," and that in case any embankment or cut in the construction of any railroad shall make it necessary to change the course of any highway or street, it shall be lawful for the railroad company to change the course or direction of the road, highway or street. The 22d section, p. 284, also provides that, whenever the track of a railroad shall cross a highway, such highway may be crossed under or over the track, " as may be found most expedient ;" and that " in cases where an embankment or cutting shall make a change in the line of such highway, or is desirable with a view to more easy ascent or descent," the railroad company " may take such additional lands for the construction of such road or highway on such new line as may be deemed requisite by the directors, unless the lands so taken for the purposes aforesaid shall be donated by the owner or owners." This statute also provides that the court shall declare " such road or highway, as located by the railroad * * * company, open for all purposes of a public road or highway without cost or expense to such railroad or canal company, and such lands so declared open shall be held for highway purposes."

A grant to a railroad company of the right to construct

its road along, upon or across, or to use an existing highway is not to be construed as a power to destroy the highway as such. This is the rule of construction unless the language of the statute is such as to show unmistakably an intention to grant such power.

The law is well settled that when a new road or way is opened or made across a way or road already existing and in use, the new way must be so constructed as to cause as little injury as possible to the old way or road. N. C. R. Co. vs. Mayor, &c., of Baltimore, 46 Md., 425.

"It is," says the Supreme Court of Illinois, "a well settled principle of the common law, resting upon the most obvious considerations of justice, that any person or corporation that cuts through a highway, for the benefit of such persons or corporation, must furnish to the public a proper crossing, even though acting under a license from the proper authorities. We refer, of course, to cases where the legislative power has not, in terms, relieved the person or company that interferes with a highway from the necessity of removing any obstructions they may create. In the absence of such an express provision, it is palpable that a railway company is under obligation to leave every highway it crosses in a safe condition for the use of the public." The People vs. Chicago & Alton R. Co., 67 Ill., 118 ; see also 42 Iowa, 234; Maltby vs. C. & W. M. Ry. Co., 52 Mich., 108, see p. 110 ; Oliver vs. N. E. Ry. Co., 9 Q. B., 409 ; P. & E. Ry. Co., 80 Ky., 147, and 10 A. & E. R. R. cases, 318. Where the statute is silent, the common law applies, and a statute which expresses specifically no further exaction than a restoration of the highway to its former condition is not to be construed as abridging the common law duty of *maintaining* the crossing in such plight as to make it reasonably safe. 52 Mich., 108.

There is usually to be found in the statutes a requirement

that the railroad companies shall restore the highway " to its former state," or put it in such condition and state of repair as not to " impair or interfere with its free and proper use," or as " not unnecessarily to have impaired its usefulness," or other equivalent provision.

In New York, where the last provision quoted obtains, it is stated in People vs. D. & C. R. R. Co., 58 N. Y., 165, to be " true that bringing in the word *unnecessarily* does imply that the usefulness of the highway may have been somewhat impaired, either in the process of construction or in the maintenance of the railway, but that it was quite certain that the section does not mean that the highway should be rendered useless, but that it does mean that the highway shall be preserved for the use of the public travel and to permit the adoption of it at the same time for the laying of its track upon it." Says Church, C. J., in People vs. N. Y. C. & H. R. R. Co., 74 N. Y., 304, " The statute implies that the usefulness of a highway intersected may be to some extent impaired, and I think it fairly implies also that the crossing must be such as that the usefulness of the highway shall not be destroyed. The duty thus imposed is an important one for the public and it should be imposed not oppressively but reasonably and fairly for the public benefit." See also 38 N. Y., 846. In Railroad vs. Commissioners, 31 O. S., 338, when the provisions of the statute required the road to be placed in such condition as not to impair its former usefulness, the doctrine is that the Legislature did not intend to require a restoration of the highway to its actual former condition, as that would be impracticable ; that substantial restoration was all that was intended ; that some inconveniences to the public travel are necessarily incident to all public railroad crossings, and such as are inseparably connected therewith must be submitted to by the public ; that usefulness implied capabilities for use, and it

never was intended to vest the company with the right to narrow the width of the highway or materially interfere with its facilities for public travel, and much less to encumber it with abutments and embankments which effectually exclude the public from the use and enjoyment of the greater part of it. It is true there is in our statute no such expression as any of those quoted above from other statutes, yet in view of the common law rule and the provisions of the act as set forth above, we think it is perfectly clear that it never was intended that the railroad companies should have power to construct their roads across or along highways in such a manner as to destroy the usefulness of the highway to the public. The power to use an existing highway is in the light of common reason not a power to render it useless to those for whom it exists, or in other words, the power to construct a railroad along, upon or across, and use a highway is, without saying more, clearly not a power to so construct the railroad upon it that it cannot be used by the public while the railroad's trains are not passing over it, or otherwise properly using their track. If it had been the intention of the Legislature to permit railroad companies in the construction of their roads to block up and permanently obstruct highways, the statute would have used words clearly expressive of such intent, so as to have relieved them from liabillty to indictment for willfully obstructing public roads and established highways. The provisions of our statute as to carrying a highway which may be *touched, intersected* or *crossed* by a railroad over or under the railroad track, " as may be found most expedient for the public good," and as to making a change in the line of the highway where an embankment or cutting calls for it, or it is desirable with a view to a more easy ascent or descent, and the grant of authority to the railroad company to acquire additional land for the construction of

such road or highway on such new line, show a clear intent upon the part of the Legislature to preserve to the public a highway, either the old one on the original surface or on a new surface or a new highway. The meaning of these provisions, in so far as they relate to the manner of the constrution of the railroad (independent of any questions which may arise as to the use or operation of it), is nothing more than that when the conditions of locality or topography are such that the railroad and highway cannot cross or intersect, on the same surface, the railroad company may pass the highway over the railroad or under, according as the former or latter shall be more for the public good ; and furthermore, if it be that the conditions are such as not to permit consistently with its practical use the grading of the highway to the level of the railroad cut or embankment, to authorize a detour or change in the route of the highway. This new line or detour in the highway, after being established upon land to be acquired by the company, is to be maintained as other public highways, and to be open as a public highway and not as a private road of the company. The power given by the statute to the company when its road intersects or crosses a highway, includes the power to alter the grade of the highway, provided it is so done as not to substantially impair the usefulness of the highway. If there be a cut or embankment, and the level of the highway is graded down or up to the surface of the railroad track in such cut or on such embankment, and this is done in such a manner and at such an angle of descent or ascent as not to work any substantial detriment to either persons or vehicles travelling the highway, the company in so doing does not transcend its powers or duties. Where the topography of the country is such that the cut or embankment makes a change of the line of the highway either necessary or desirable, " with a view to a more easy ascent.

or descent," the change may be made. Where the railroad passes *along* instead of across the highway it must be so constructed as not to destroy or obstruct the latter or prevent its use by the public; no greater power was intended.

If it had been intended that the railroad company should have the right to entirely obstruct and destroy existing highways, why were the above provisions enacted, whose only purposes were to authorize the railroad company either to pass the highway on a different surface or to make a new highway around the obstruction occasioned to the old one by the cut or an embankment? They show as distinctly as does the language quoted from other statutes, a clear intent to preserve the public highways against obstructions such as is alleged in this indictment.

Our understanding of this indictment, as indicated above, is that this obstruction is one whose illegality is attributable to the manner of the construction of the railroad upon the highway and not to the fact that the highway is crossed at a point outside of the authorized route of the railroad. It is only upon the former view that we think the indictment valid, for it does not state facts showing any illegality of the latter character. Wabash and St. Louis Ry. Co. vs. People, 12 Ill., app. 448, cited in U. S. Digest, 1883, p. 623, sec. 15.

As the judgment before us prevents the railroad company from abating the nuisance, or " removing the obstruction " by grading the highway to the surface of the railroad track or by carrying the highway under or over the railroad, or by changing the line of the highway, or by carrying the railroad along and upon the highway on the surface of the latter, or in such other manner as not to obstruct it or prevent its use by the public, according as one or the other of these courses may, under the circumstances

of the case, be proper, but simply orders an absolute removal by defendant of the constitutent elements of the road bed from the highway. We think the judgment erroneous in the above respect.

The form of a judgment in cases of nuisances is discussed in sec. 2369 and notes of Vol. 3, Am. Cr. Law, 6th Edition ; Wood on Nuisances, sec. 864, 2d Edition ; Bishop Cr. Pro., Vol. 2, sections 870, 871, and authorities cited. Every judgment should be adapted to the nature of the nuisance of which a defendant may be convicted.

The judgment is reversed and the cause will be remanded to the Circuit Court with directions to enter a judgment in accordance with this opinion and the practice in such cases.