[No. 15295. Department Two. October 10, 1919.]

LIBBIE BULLOCK, *Respondent*, v. YAKIMA VALLEY
TRANSPORTATION COMPANY *et al., Appellants.*[1]

BOUNDARIES (1)—DESCRIPTION—MONUMENTS AND MARKS. A call
in a deed to the south line of a road as then used, which was marked
by a fence, being to a monument, controls a description by metes
and bounds which would carry it beyond and into the road.

COUNTIES (88–92)—CLAIMS AGAINST COUNTY—DEMAND FOR PAY-
MENT—SUFFICIENCY. A claim for personal injuries against a county
is not insufficient in that it makes no formal demand for payment,
when it was sufficient in all other respects.

SAME (90, 95)—CLAIMS — REJECTION — PRESUMPTIONS—ACTIONS—
REMEDIES. Under Rem. Code, § 3909, providing that no action shall
be commenced against a county until a claim has been presented
and disallowed, it will be conclusively presumed, after the commis-
sioners have failed to act within a reasonable time, that they re-
jected the claim, and claimant may sue at law without resorting
to mandamus to force the commissioners to act; and seven months
is more than a reasonable time.

SAME (90) — ACTIONS ON CLAIMS — LIMITATIONS — REJECTION OF
CLAIM. Under Rem. Code, § 3909, requiring action on a claim against
a county to be commenced within three months after rejection of
the claim, where the commissioners refused to act within a reason-
able time, the claim will be considered rejected as of the time the
claimant elected to sue, and the county could not take advantage of
its own wrong and claim an earlier rejection barring the right of
action.

APPEAL (384)—REVIEW—COPARTIES—FAULT OF COPARTY. Error in
admitting evidence by a codefendant, over the objection of both
plaintiff and defendant, may be assigned for reversal of plaintiff's
judgment, although she was not responsible for the error.

HIGHWAYS (64)—DEFECTS—NOTICE TO COUNTY — PHOTOGRAPHS—
ADMISSIBILITY. Photographs showing a dilapidated condition of a
county sidewalk generally, are admissible against the county only
for the purpose of showing notice of the particular defect which
caused the injury; and when offered by a codefendant to show
plaintiff's contributory negligence, it is error to fail to limit their
effect as against the county.

[1]Reported in 184 Pac. 641; 187 Pac. 410.

EVIDENCE (53, 94) — RES GESTAE — ADMISSIONS — STATEMENTS OF AGENT—AFTER TRANSACTION. In an action for .personal injuries sustained upon a defective county sidewalk, a letter from the deputy prosecuting attorney referring to the defective condition, written fifteen months after the accident, is not admissible as an admission by an agent, since it was not part of the *res gestae*.

HIGHWAYS (61, 66)—DEFECTS—DUTY OF COUNTY—SIDEWALKS. Under Rem. Code, § 951, making a county liable for injuries from acts or omissions of the county, and §§ 3890 and 5575 authorizing county commissioners to lay out highways and giving them control, a county is liable for negligence in failing to maintain county sidewalks in proper repair.

PLEADING (181-189)—VARIANCE—OWNERSHIP OF "RIGHT OF WAY"— MATERIALITY. In an action against a county and a railroad company for injuries sustained upon a county sidewalk at the railway crossing, failure to prove the company's ownership of the property is not a fatal variance under a complaint merely alleging that the company owned and maintained "a right of way" across the highway; especially where no surprise was claimed.

RAILROADS — HIGHWAY CROSSINGS — MAINTENANCE OF SIDEWALK — LIABILITY—STATUTES. Rem. Code, § 8730, relating to railroad crossings, being entitled an act compelling railroads to fence their right of way and to protect the owners of stock and declaring the law of negligence, has no application to the maintenance of sidewalks at railroad crossings for the convenience of pedestrians.

SAME. Rem. Code, § 9080, authorizing railroads to cross highways, has no reference to the maintenance of crossings and does not affect the common law duty to keep the crossing in reasonable repair.

SAME—HIGHWAY CROSSINGS—SIDEWALKS—COMMON LAW LIABILITY FOR MAINTENANCE. At common law, a railroad company crossing a highway by statutory permission owed the duty to maintain that portion of the highway used and occupied by it, including sidewalks and approaches necessary for a reasonably safe crossing.

TRIAL — SPECIAL VERDICT — ASSENT OF REQUIRED NUMBER. Under Rem. Code, § 358, authorizing a verdict agreed to by ten of the twelve jurors, and § 364, authorizing special findings, a jury is properly instructed that any ten of their number may answer any one of the special interrogatories submitted.

TRIAL (117)—INSTRUCTIONS—ERROR CURED BY OTHER INSTRUCTIONS. An instruction as to the difference between proximate and remote cause is not prejudicial in stating that plaintiff's negligence must be *the* proximate cause, as distinguished from *a* proximate cause,

in order to prevent recovery, in the light of other instructions properly defining proximate cause in connection with contributory negligence.

Appeals from a judgment of the superior court for Yakima county, Taylor, J., entered March 2, 1918, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained through a defective sidewalk. Reversed as to appellant Yakima county; affirmed as to appellant transportation company.

*A. C. Spencer, Richards & Fontaine,* and *John F. Reilly,* for appellant Yakima Valley Transportation Company.

*O. R. Schumann, J. Lenox Ward,* and *Dolph Barnett,* for appellant Yakima County.

*Snively & Bounds,* for respondent.

BRIDGES, J.—Respondent brought suit against Yakima County and Yakima Valley Transportation Company to recover damages for personal injury. A county road, for convenience called Naches highway, ran from the town of Selah, past several factories and canneries, to the Northern Pacific Depot some distance away. It was extensively traveled, both by vehicles and pedestrians. Originally this road was much narrower than it now is. About 1909, the property owners, wishing to have the road widened, deeded strips of land to the county for that purpose. Shortly after the road was thus widened, the property owners and certain other citizens, at their own expense, built a wooden sidewalk along the southerly margin of the newly widened road. This sidewalk consisted of stringers with boards nailed cross-wise. It was approximately four feet in width. The county has never repaired or worked on this sidewalk, although it has had

knowledge that it was extensively traveled by pedestrians. The sidewalk mentioned was approximately two feet lower than the graveled roadway. In 1915, the transportation company obtained permission from the state public service commission to build its railroad across this highway at the grade of the graveled portion thereof. In order to do so, it was necessary to make a fill of about two feet in that portion of the highway south of the graveled portion and where the sidewalk was located. In making this crossing the transportation company's employees sawed off the sidewalk at the point of crossing and lifted the easterly section thereof, about fifteen feet in length, out of the way, leaving the same intact, and did likewise with the section on the westerly side of the track. It then made its fill of about two feet, laid its ties and rails thereon, and replaced the sections of the sidewalk just as they originally were, except originally they were level, but were now placed on the fill, thus giving some incline up to the railroad crossing. On the 23d of November, 1916, the respondent was walking on this sidewalk with a friend. When the friend stepped on one end of the fourth board east of the easterly rail, that board lifted and caused the respondent to trip and fall, whereby she was injured. After making the crossing, the transportation company had never maintained any portion of the sidewalk, but did plank between its rails and for about one foot on the outside of each rail.

The respondent undertook to prove that the transportation company actually owned the title to that portion of the roadway which covered the sidewalk crossing and the location of the offending board, whereas that company contends that its ownership reaches only to the boundary line of the roadway as widened. The deed which the transportation company received described the lands by metes and bounds, and, as so

described, would carry the description into the road and would give title to the transportation company to that portion of the roadway covered by the crossing and the sidewalk here involved. But that deed further recites that the land conveyed "runs to the south line of the road now used and traveled as a public road." This south line of the road had a fence on it. It is a well established rule of law that description by monuments will control over description by metes and bounds, consequently we are of the opinion, and hold, that the transportation company's ownership went only to the south line of the road, and did not include the crossing involved in this suit.

Judgment was rendered in favor of the respondent against both the appellants. The appellants appeared separately in the trial court and have separately appealed. They have raised many questions, some of which are of considerable importance and difficulty. We will first discuss the questions raised by the appellant county.

I. The complaint alleged that, on the 24th day of March, 1917, the respondent caused to be served and filed with the county auditor of the appellant county, a notice of claim which the board of county commissioners had failed, neglected and refused to pass upon, although the board had had more than a reasonable time within which so to do. In support of her action, the respondent introduced such claim or notice in evidence. This notice is full and complete; it sets out the place, time, manner and extent of the injury, and the amount of her damages. It seems to be conceded that the notice is all that the statute required, except that it does not, upon its face, make demand of the county for payment. It was contended by the county that this claim or notice was insufficient for the reason

that it made no demand upon the county for payment or compensation. Section 3909, Rem. Code, after providing for appeals from the actions of the county commissioners, contains the following clause:

"Nothing herein contained shall be so construed as to prevent a party having a claim against any county in this state from enforcing the collection thereof by civil action in any court of competent jurisdiction, after the same has been presented or disallowed, in whole or in part, by the board of county commissioners of the proper county; provided, that such action be brought within three months after such claim has been acted upon by such board."

The trial court was right when it ruled that this claim was sufficient. While on its face it does not make any demand for payment, yet the only possible purpose the respondent could have had in making the claim was to make a demand against the county for reimbursement.

II. It seems to be assumed in the briefs, although there was no testimony that we can find on the subject, that the county commissioners never acted on this claim either by allowing it in whole or in part, or by rejecting it, and the appellant county now contends that this suit was prematurely brought, for the reason that the statute, above quoted from, contemplates that no action may be brought on such claim until the same "has been acted upon" by the board. In coming to the conclusion we have, we are mindful of the rule of law that a county may not be sued at all by a private individual except by permission of statute, and then only upon such terms and conditions as the legislative act may prescribe. Nearly all other similar statutes in this and other states contain a provision to the effect that suit shall not be commenced until the claim has been presented and a reasonable time for action thereon has elapsed. There appear to be very few authorities

directly in point on this question. The briefs cite none
such. We hold that, under this statute, after the
county commissioners have failed to act within a rea-
sonable time, it will be conclusively presumed, as a
matter of law, that they have rejected the claim. The
appellant contends that, if the commissioners have had
a reasonable time within which to act, and have failed
and refused to act, the claimant may bring mandamus
to force the commissioners to take action. They cite
a large number of cases showing that mandamus is
the proper remedy in that instance. We have no doubt
that respondent might have resorted to this remedy,
but the law abhors a multiplicity of suits and the courts
will always so construe the law as to avoid them if
possible. It would seem absurd that the law should be
such that the county commissioners might arbitrarily
refuse to act on a claim, and thus hold the claimant out
of her just rights or force her into expensive litigation
to compel them to do that which the law has imposed
upon them. If the commissioners have not acted upon
this claim within a reasonable time, they ought to be
estopped to deny that, by such neglect they have re-
jected the claim. The case of *Kraft v. City of Madison,*
98 Wis. 252, 73 N. W. 775, is almost directly in point.
The statute there provided that no action should be
maintained against the city until the claim on which it
is based shall have been first presented to the council
for allowance, and that the disallowance of the claim
is final, except by an appeal to the circuit court. The
plaintiff in that case had presented a claim which the
council had failed, within a reasonable time, to act
upon, and he brought suit directly on his claim. The
court said:

"But there is no provision in the charter for the
case of an entire omission of the common council to
act upon the claim, . . . No doubt, the common

council is to be allowed a sufficient and reasonable time in which to make audit of the claim  .   .   .   Until the expiration of such reasonable time, the city should not be subject to be harassed by an action.  But, by omitting to act upon the claim within such reasonable time, it may fairly be deemed to waive the benefit of its exemption from an action instituted in the usual way.  It cannot by inaction stand off the claimant indefinitely.  .   .   .   But it is urged that the claimant had a remedy, by way of mandamus, to compel the common council to act upon his claim, and that he was limited to that remedy.  Doubtless, that remedy was open to him.  But that affords a remedy only by a circuitous route.  .   .   .   The law favors directness, rather than circuity, of action.  The plaintiff was not limited to the remedy by mandamus.  He had an election.  It was within his election to bring his action in the usual way, directly against the city.  *Sharp v. Mauston,* 92 Wis. 629.''

This claim was filed with the county commissioners on the 6th day of April, 1917; this suit was brought nearly seven months thereafter, on the 19th day of November, 1917.  It is perfectly plain that more than a reasonable time was allowed the commissioners within which to act upon the claim, and having failed to act, we hold that they have thereby rejected the claim and the respondent had a right to maintain her suit.

But counsel for the appellant assert that, if it be concluded that the failure of the commissioners to act within a reasonable time was tantamount to a rejection of the claim, then, since three months time after the rejection is given by the statute within which to bring such suit, it would be reasonable to conclude that three months would be a reasonable time within which to give the commissioners to act upon the claim.  Consequently, they contend, that the claim must be considered as rejected within three months after it was

filed, and, if so, then this suit was not brought within three months after the rejection. We do not attach much weight to this contention. In the first place, the claim would be considered as rejected as of the time the claimant elected to sue; and secondly, the county may not take advantage of its own wrong.

III. During the trial the county's codefendant, the transportation company, offered in evidence various photographs showing the dilapidated condition of this sidewalk at various points somewhat distant from the place of the actual injury. The special purpose of these photographs was to attempt to show that the sidewalk throughout its length was in a very dangerous condition and that the respondent was guilty of contributory negligence in walking thereon at all. The court received these photographs over the objection of both the county and the respondent. The county contends that, in no event, as against it, could such photographs be admitted in evidence, except to show, or as tending to show, notice on its part of the particular defect in question. The respondent does not answer this argument except to say that she did not offer these photographs in evidence and that she objected to them, and consequently, if there was any error in receiving them, that error cannot be attributed to her, and she cannot be made to pay the penalty. This, however, is not the rule. Each party to a lawsuit is entitled to a fair trial. The court itself represents each and all of the litigants, and each litigant must bear the burden of any errors which may be made by the court. If the court himself should ask and require of the witness an answer to a highly prejudicial question, certainly the party who was not injured thereby could not be heard to say that he ought not to be held responsible and be required to bear the burden of the court's error. Instructions which the court gives the jury are acts of

the court for which no party litigant is directly responsible, and yet any litigant injured by such instruction can complain thereof. In the case of *Palmer v. New York & L. C. Transp. Co.,* 27 N. Y. Supp. 561, the court said:

"But the respondent claims that the evidence in regard to the custom was offered by appellant's codefendant, and not by him, and hence appellant's objection to the introduction of such evidence is not available against the plaintiff on this appeal. . . . The jury were not instructed that the objectionable evidence was not to be considered as against appellant, as in the case last cited [*Schneider v. Railroad Co.* (Super. N. Y.), 15 N. Y. Supp. 556] . . . Although the plaintiff did not introduce the evidence as to the custom, or request the charge above referred to, the effect of such evidence and charge being, in all probability, to influence the verdict, we think a new trial should be granted. The plaintiff's position is like that of a party where a trial judge asks of a witness an improper question, which is objected to, and the objection overruled, and an exception taken. If such exception is well taken, a new trial will be granted on account of the error of the court, although such error occurred without any fault on the part of such party."

In the case of *Zimmer v. Third Avenue R. Co.,* 55 N. Y. Supp. 308, where this question was involved, the court said:

"However, as to such requests as the court did charge, the source from which they proceeded was immaterial, and, if erroneous, the aggrieved party is entitled to reverse the judgment to the same extent as if the charge had not been made at the instance of its codefendant."

See, also, the case of *Pierce v. Michel,* 60 Mo. App. 187.

It is, therefore, necessary for us to determine whether or not these photographs were admissible as

against the county. It appears that, under the almost universal rule, such photographs would, within the reasonable discretion of the court, be admissible for the purpose of showing notice on the part of the county of the particular defect which caused the injury. But such testimony is not admissible for any other purpose. 8 Ency. of Evidence, 911; *Olson v. Town of Luck,* 103 Wis. 33, 79 N. W. 29; *Lyon v. Grand Rapids,* 121 Wis. 609, 99 N. W. 311; *Laurie v. Ballard,* 25 Wash. 127, 64 Pac. 906; *Shearer v. Buckley,* 31 Wash. 370, 72 Pac. 76.

We heartily approve, of what was said by the court in the case of *Olson v. Town of Luck, supra,* as follows:

"The plaintiff was allowed to prove, against objection, that the highway between the place of the accident and the place where the wagon was found (a distance of more than a mile) was full of rocks and holes. Of course, the fact that there were other serious defects in the road at other points, at a distance from the alleged defect which caused the accident, can have no legitimate bearing on the question as to whether the projecting stone in question was or was not an actionable defect, but it is manifest that such evidence would be almost certain to have great weight with the jury upon this very question. It is true that there are a number of cases in this court holding that, where a defect in a certain sidewalk, bridge or other similar structure is charged to have caused an injury, evidence of the general bad condition of the same sidewalk, bridge or structure may be shown, provided, the general disrepair proven is of the same general character as the defect in question. *Shaw v. Sun Prairie,* 74 Wis. 105; *Barrett v. Hammond,* 87 Wis. 654. In these cases, however, such testimony was not admitted for the purpose of proving negligence or that the defect in question existed, but only for the purpose of proving constructive notice to the corporation of the defect in question, which would be fairly inferable from the existence of many similar defects, resulting from the same general cause, in the same structure."

It must be remembered that these photographs were offered for the purpose of showing contributory negligence on the part of the respondent. It is probable they were admissible for that purpose, but in receiving them the court should have warned the jury that they could not be considered as tending to prove that the defect complained of existed. Without such warning, the jury would likely conclude that proof of defects away from the place of injury would be proof of the existence of the defect in question.

We conclude that the court committed error in the manner of receiving these photographs.

IV. During the trial the transportation company offered in evidence a letter written by the then deputy prosecuting attorney of the county to a resident thereof, concerning this sidewalk. This letter was received over the objection of the county and the respondent. It was written some fifteen months after the injury involved in this action occurred. It was as follows:

"Yakima County,
"Office of Prosecuting Attorney,
"North Yakima, Washington.  Feb. 16, 1918.
"Mr. Ira S. King,
"Pres., Selah Business Men's Association,
"Selah, Washington.
"Dear Sir:  Upon investigating the sidewalk running from the village of Selah to the Northern Pacific Railway Station, we notice that the same is in bad condition, some boards are loose, others are partially gone, still others have holes in which the foot of a pedestrian might be caught, causing them to fall and become seriously injured.

"The county is now defending a damage case which has been instituted because of alleged defect in the sidewalk.

"The county commissioners have instructed me to inform the business men of Selah, through you, that they desire to co-operate with them in every way for

the convenience of the residents of Selah, but that owing to their liability in case of accident or injury to pedestrians, they deem it advisable to require said sidewalk to be entirely removed unless the same is put in a safe condition in the immediate future and so maintained.          Respectfully,
"(Signed)   J. Lenox Ward,
"Deputy Prosecuting Attorney."

We cannot understand upon what principle of law this letter was received in evidence. It certainly was very detrimental to the county. If the letter had been written at the time of the injury and as a part of the *res gestae,* then there might have been some reason for its introduction. In the case of *Weidman v. Tacoma R. & Motor Co.,* 7 Wash. 517, 35 Pac. 414, it was held that the declarations of an agent made sometime after an accident cannot bind the principal unless they were made as a part of the *res gestae.*

The case of *Randall v. Northwestern Telegraph Co.,* 54 Wis. 140, 11 N. W. 419, 41 Am. Rep. 17, was one for damages on account of personal injury. At the trial a telegram sent by the railroad superintendent was read in evidence. This telegram was as follows:

"Many thanks for your kind words for us to the gentlemen who were hurt by our old wire. I hoped to be with you tomorrow and see them, but I must go home. Have them make a bill and send me. We will pay any reasonable bill. My instructions, if obeyed, would have prevented the accident, but the repair-man neglected his duty, and we must pay the penalty. Answer."

The telegram was sent on October 20, and the accident referred to occurred during the previous August. The court said:

"It is clear that this telegram was not a part of the *res gestae,* and its admission as original evidence against the defendant can only be sustained upon the

ground that the admission of the general agent or superintendent of the company bound the company. In the absence of any proof showing that the superintendent was authorized by the company to bind it by his admissions, we do not think the court was justified in assuming that he had such power."

This letter ought not to have been received for any purpose.

V. The county further contends that the statutes of the state of Washington do not authorize it to build sidewalks in its roads, and therefore it cannot be made liable for any negligence in failing to properly maintain them if any are built. The authorities cited by the appellant in support of this contention are not in point.

Section 951, Rem. Code, provides:

"An action may be maintained against a county, or other of the public corporations mentioned or described in the preceding section, either upon a contract made by such county or other public corporation in its corporate character, and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation."

Section 3890, Rem. Code, authorizes the county commissioners to lay out, discontinue, and alter county roads and highways, and do all other acts relative thereto. Rem. Code, § 5575 *et seq.*, gives the county commissioners supervision and control of the county roads and bridges and authorizes the levy of taxes therefor. We have no doubt that a sidewalk in a county road is a part of the road authorized by law, and that it is the duty of the county to keep it in reasonably good repair. This exact question has, at least by inference, been decided by this court. In the case of *Clark v. Lincoln County*, 1 Wash. 518, 20 Pac. 576, the plaintiff sued the county for personal injuries caused by a defective sidewalk. This court held that the

county was not by law authorized to build and maintain sidewalks, and was not, therefore, liable for an injury resulting from a defect therein.   However, in the case of *Kirtley v. Spokane County*, 20 Wash. 111, 54 Pac. 936, the doctrine of the *Clark* case was repudiated.   See, also, *Orrock v. South Moran Township*, 97 Wash. 144, 165 Pac. 1096.

We will now consider the errors contended for by the appellant transportation company.

VI.   This appellant contends that the complaint alleged that it was the owner of the property where this crossing of the sidewalk was made, but the court erroneously submitted the case to the jury on the theory that the transportation company merely had a statutory right to cross.   It is contended that this was a fatal variance; that, if the appellant transportation company actually owned the title to this land, one set of laws would be applicable to its duties, but if it had nothing more than a right of way given by the statute, entirely different duties would devolve upon it.   It is true the respondent did undertake to prove that this appellant was the owner of the title to the land covered by this sidewalk and crossing, and that it failed in its proof, but we think the allegations in the complaint were broad enough to allow the court to submit the case to the jury upon the theory that the appellant had nothing more than a statutory right of way.   The complaint alleges that the transportation company "owned, controlled and maintained a right of way across said Naches Avenue."   The right of way there pleaded may be construed to mean the right of way given by the statute, or the statutory privilege of crossing the county road.   In any event, the appellant did not claim surprise nor ask a continuance on this account, and we do not see that there was such a vari-

ance from the complaint as that the appellant was prejudiced.

VII.   The trial court was of the opinion that the duties devolving upon the transportation company to construct and maintain the crossing in question were imposed by § 8730 *et seq.* of Rem. Code.   Appellant contends that that section of the code had reference only to stock crossings and is inapplicable to the question involved in this case.   With this contention we agree.   That section was a part of the Laws of 1907, and provided that every company building or operating a railroad shall cause to be constructed and maintained in good repair a substantial fence along its right of way, and wherever the railroad shall cross a public highway, a safe and sufficient crossing must be built and maintained, and on each side of the crossing there must be cattle guards, and that the railroad company shall be liable on account of stock killed or injured if it fail to comply with the statute.   The title of the act is as follows:

"An act compelling railroads to fence their rights-of-way and to protect the owners of stock injured by moving railway trains, declaring a law of negligence with regard to stock injured by railway trains."   Laws 1907, p. 169.

It is very plain to us that this statute was passed solely for the protection of stock and is wholly inapplicable to this case.   However, a later act of the same session (Laws 1907, p. 192) gives authority for railroads to cross highways.   It provides, among other things, as follows:

"In case any such railroad or railway, is or shall be located in part on private right-of-way, the owner thereof shall have the right to construct and operate the same across any county road or county street which intersects such private right-of-way, if such crossing

is so constructed and maintained as to do no unnecessary damage: Provided, That any person or corporation constructing such crossing or operating such railroad or railway on or along such county road or public street shall be liable to the county for all necessary expense incurred in restoring such county road or public street to a suitable condition for travel.'' Rem. Code, § 9080.

Appellant contends that this statute is controlling and that it does nothing more than announce the principles of the common law. We are of the opinion that this last statute does not pretend to set out the duties of a railroad company with reference to the construction or maintenance of crossings, but only authorizes a railroad to cross a highway. This statute does not affect the duty imposed by the common law to keep the crossing in reasonable repair. The appellant, having built its road across this highway, its duty to the public and to the respondent, in this case, must be measured by the rules of common law. It becomes necessary for us to determine what were such duties under the common law.

Counsel for appellant has presented a forceful brief and argument to the effect that, at the common law, when one way was laid over an existing way, the junior way was required to do no unnecessary damage in making the crossing, and if new structures are necessary to the crossing of the old way by the new, the new way must construct and maintain those new structures. The authorities cited by counsel support this contention as to what the common law is on this question. From this statement of the common law, the appellant draws the conclusion that the only duty devolving upon it was to replace the sidewalk in as good condition as it was before it crossed the same, and that it had no duty to maintain it. We think, however, appellant misconstrues and misinterprets the duties imposed upon

it by the common law. It must be remembered that, in constructing its road across the highway, it found the sidewalk in question to be about two feet beneath what would be the grade upon which its road would be built. It therefore made a fill of about two feet where the sidewalk was. The sidewalk was then placed back on top of this fill; the plank upon which the respondent tripped was twenty-six inches from the easterly rail. The overlap of an engine or car passing the sidewalk would be about twenty-three inches from the rail. In other words, the overlap of the train would not reach the plank on which the respondent was injured. However, the defective plank was upon that portion of the sidewalk which lay upon the fill made by the appellant. The exact question to be determined is whether or not it was the duty of this appellant to maintain that portion of the sidewalk upon which the respondent was injured.

It is our opinion that the common law imposes the duty upon a railroad crossing a highway by virtue of a statutory permission, to maintain that portion of the highway used or occupied by it, and since, in this case, the fill where the sidewalk was located was necessary for the uses of appellant, and since the appellant occupied all that portion of the highway actually covered by its fill, and since that portion of the sidewalk upon which the respondent was injured was laid on a portion of this fill, we hold that it was the duty of the transportation company to maintain that portion of the sidewalk.

The case of *Omaha & R. V. R. Co. v. Brady*, 39 Neb. 27, 57 N. W. 767, was a personal injury case at a railroad crossing. The court there said:

"I am not aware of any statute in this state which expressly provides that railroad companies shall construct and maintain in good order street crossings at

the grade intersections of their railroad and side tracks with the streets of the cities of this state; but railroad companies are by the statutes given the right to lay their tracks in and across the streets of the municipalities of the state, and this right carries with it the corresponding duty on the part of the railroad companies to construct and maintain at all times proper crossings on the streets intersected at grade by their tracks and side tracks; and if any injury is caused by reason of their neglect to do either, they are liable therefor."

At page 273, vol. 33 Cyc., it is said:

"It is not sufficient for a railroad company properly to construct a crossing and to restore the highway crossed to a proper condition; but it is the duty of the company subsequently to keep and maintain the crossing in a safe and suitable state of repair, including not only the crossing of the tracks but also the approaches thereto. This is a common law duty, but is frequently expressly imposed by statutory or charter provisions."

In the case of *City of Moundsville v. Ohio River R. Co.*, 37 W. Va. 92, 16 S. E. 514, 20 L. R. A. 161, it was said:

"By the common law, if a railroad or canal company cross or build its work upon a public highway, it must make and maintain a proper, convenient, and safe crossing, and restore the highway to as good condition for public use as the condition in which it was before such interference with it, though such company be acting under leave from the proper authority."

*Palatka & I. R. R. Co. v. State*, 23 Fla. 546, 3 South. 158, 11 Am. St. 395, states the rule thus:

"Where the statute is silent, the common law applies, and a statute which expresses specifically no further exaction than a restoration of the highway to its former condition is not to be construed as abridging the common law duty of maintaining the crossing in such plight as to make it reasonably safe."

In *People ex rel. Bloomington v. Chicago & A. R. Co.,* 67 Ill. 118, the court says:

"It is a well settled principle of the common law, resting upon the most obvious considerations of justice, that any person or corporation that cuts through a highway for the benefit of such person or corporation, must furnish to the public a proper crossing, even though acting under a license from the proper authorities. We refer, of course, to cases where the legislative power has not, in terms, relieved the person or company that interferes with a highway, from the necessity of removing any obstructions they may create. In the absence of such an express provision, it is palpable that a railway company is under obligation to leave every highway that it crosses in a safe condition for the public. . . . An obligation to keep up a crossing, imposed as a condition of the right to. cross a highway, must be regarded as necessarily attaching to whatever person or corporation may be the owner of the road as long as the right is exercised. It is a continuing condition inseparable from the enjoyment of the franchise."

At § 1112, vol. 3, Elliott on Railroads (2d ed.), it is said:

"The duty of a railroad company in regard to the restoration and repair of highway crossings is not fully performed and ended by the mere restoration of the highway or the construction of a proper crossing in the first instance. It should keep the crossing in reasonably safe condition and repair, with reference both to the use of the same for its own purposes and for ordinary travel upon the highway."

To the same effect see the following cases: *Maltby v. Chicago & W. M. R. Co.,* 52 Mich. 108, 17 N. W. 717; *Moberly v. Kansas City, St. J. & C. B. R. Co.,* 17 Mo. App. 518; *State ex rel. City of Minneapolis v. St. Paul M. & M. R. Co.,* 98 Minn. 380, 108 N. W. 261, 120 Am. St. 581, 28 L. R. A. (N. S.) 298; *Paducah R. R. Co. v. Commonwealth,* 10 Am. & Eng. R. R. 318; *Cleveland*

*v. City Council of Augusta,* 102 Ga. 233, 29 S. E. 584, 43 L. R. A. 638; *Farley v. C. R. I. & P. Co.,* 42 Iowa 234; 2 Elliott, Roads and Streets, § 1010; *Birlew v. St. Louis & S. F. R. Co.,* 104 Mo. App. 561, 79 S. W. 490; *Dyer County v. Chesapeake, O. & S. W. R. Co.,* 87 Tenn. 712, 11 S. W. 943.

We have no hesitancy in laying down the rule that, where a railroad crosses a highway (in the absence of statutory regulation), it is the duty of the railroad company to maintain that portion of the highway which it actually occupies and uses, including such approaches to the railroad tracks as are necessary in order to make a reasonably safe crossing. If the crossing is on the exact grade of the highway, the approach would be only that portion of the highway very near to the track, where it would be necessary to board or otherwise improve so as to make a reasonably safe way over the rail; but if the railroad cross the highway either above or below grade, then the approach would be of such proper length as would furnish a reasonable grade to the crossing and be of such width as to furnish a reasonably safe crossing. The width of the approach would depend upon how much of the highway right of way is improved and traveled.

Counsel for appellant seems to admit that it is the duty of the railroad to maintain that portion of the crossing which is between the rails. We know of no rule of law or reason which would require the railroad company to maintain that portion of the highway which is between the rails and would relieve it of the duty to maintain that portion of the highway upon which it has its fill. If, in this instance, the railroad company had put its railroad on blocks where it crossed the sidewalk, and had elevated the sidewalk on blocks to make a proper crossing of the track, it would seem clearly to be the duty of the transportation

company to maintain that portion of the sidewalk which it had so elevated. It would seem that there could be no difference in principle whether the sidewalk is propped up or whether it is laid on a fill made by the transportation company.

We think the court was justified in submitting the question of negligence to the jury, in so far as the transportation company was concerned. The conclusion to which we have come makes it unnecessary to discuss some of the instructions complained of with reference to approaches.

VIII. The court submitted to the jury certain interrogatories to be answered by them. We do not think it is necessary to set out here these interrogatories, or to say more than that we are of the opinion that they were unobjectionable. In this connection, the court instructed the jury that any ten of their number might answer any one of these interrogatories, and the appellant complains of this portion of the instructions. The matter, however, seems to be controlled by our statute. Section 358, Rem. Code, provides as follows:

"In all trials by juries of twelve in the superior court, except criminal trials, when ten of the jurors agree upon a verdict, the verdict so agreed upon shall be signed by the foreman, and the verdict shall stand as the verdict of the whole jury, and have all the force and effect of a verdict agreed to by twelve jurors."

Section 364, Rem. Code, is as follows:

"In every action for the recovery of money only, or specific real property, the jury, in their discretion, may render a general or special verdict. In all other cases, the court may direct the jury to find a special verdict in writing upon all or any of the issues, and in all cases may instruct them, if they render a general verdict, to find upon particular questions of fact to be stated in writing, and may direct a written finding

thereon. The special verdict or finding shall be filed with the clerk and entered in the minutes.''

It would appear, therefore, that these interrogatories were special verdicts under the statute, and since the statute authorizes ten jurors to return a verdict in certain actions, it would seem that the court's instruction authorizing any ten of the jurors to answer the questions was in accordance with the statute.

IX. In instruction No. 34 the court undertook to define to the jury proximate cause, and in so doing used the following expressions:

''In event you believe that one or the other or both of the defendants were negligent and that the plaintiff was also negligent, you must ascertain which negligence was the proximate cause of the injury as distinguished from the remote cause, and base your verdict accordingly. Any one or all of the parties may have been negligent; if the negligence of the plaintiff was the proximate cause of the injury, the plaintiff cannot recover; but if her negligence, if any, was not the proximate cause, but the remote cause, and the negligence of one or both of the defendants was the proximate cause, then the plaintiff would be entitled to recover.''

The appellant transportation company objects to this instruction because the court told the jury that the respondent's negligence must be *the* proximate cause as distinguished from *a* proximate cause, in order to prohibit her recovery. The distinction made by the appellant is correct as a principle of law; but in this instruction the court was manifestly instructing the jury as to the difference between proximate and remote cause, and when read in that light the instruction is not improper. Instruction No. 30 covered the question of contributory negligence, and set forth that contributory negligence arises from the failure on the part of the person injured to exercise

reasonable care, and if the failure to exercise such reasonable care "proximately contributes to the cause of the injury," then there can be no recovery. This instruction properly defines proximate cause in connection with contributory negligence.

One or two other minor questions raised by the transportation company's briefs have been duly considered, but we do not find any merit in them.

The case is reversed and remanded for new trial as to the appellant county, and the judgment is affirmed as to the appellant transportation company.

HOLCOMB, C. J., MOUNT, PARKER, and FULLERTON, JJ., concur.

ON REHEARING.

[*En Banc.* February 17, 1920.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adhere to the opinion heretofore filed herein, and for the reasons there stated, the case is reversed and remanded for new trial as to the appellant county, and the judgment is affirmed as to the appellant transportation company.