24 F.3d 248
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 RIEBE WELL DRILLING, INC., a Washington corporation,
Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 92-36903.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 10, 1994.
Decided May 5, 1994.
 
 Before: HUG, HALL and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Riebe Well Drilling, Inc. (Riebe) sued the United States under the Federal Tort Claims Act (28 U.S.C. Sec. 2671 et seq.) to recover for property damage and lost profits resulting from the collapse of an old wooden bridge while Riebe's well drilling rig was crossing it. The bridge is located on property held in trust by the United States and crosses an irrigation canal right-of-way owned by the Wapato Irrigation Project (WIP), a division of the Bureau of Indian Affairs (BIA). Riebe claims the United States breached a duty to maintain, inspect and/or repair the bridge. After a bench trial, the district court entered judgment for the United States. The court held that the government had not owned the bridge and it had no duty to maintain, inspect or repair it.
 
 
 3
 We have jurisdiction under 28 U.S.C. Sec. 1291 and we affirm.
 
 DISCUSSION
 
 4
 Riebe argues that 25 C.F.R. Sec. 171.9(a) imposes on the government a statutory duty to maintain and repair the bridge, because the bridge spanned WIP's irrigation canal. The trial court held that 25 C.F.R. Sec. 171.9 deals with a permitting system for structures crossing irrigation project canals and is inapplicable to structures existing prior to the implementation of the permitting system. We agree.
 
 
 5
 Statutory interpretation is a question of law subject to de novo review. Anderson v. United States, 966 F.2d 487, 489 (9th Cir.1992). 25 C.F.R. Sec. 171.9(a) states, "All structures, including bridges or other crossings, which are necessary as part of the project's irrigation and drainage system will be installed and maintained by the project." Section 171.9 is a revised version of former 25 C.F.R. Sec. 124.12 which dates back to the late 1940's. 14 F.R. 3707, July 6, 1949. Section 124.12(a) stated, in part:
 
 
 6
 ... Any person or corporation desiring to build a bridge or other structure over, under, in or across a project canal, lateral or drainage ditch, shall first obtain from the project engineer a written permit to build such structures.
 
 
 7
 Id. Section 171.9(c) states that "[a]fter a project is completed, additional structures ... needed for private use ... will be constructed and maintained under revocable permits...."
 
 
 8
 Based on the plain language of these statutes, it is clear that only future structures are contemplated. No provision is made for structures already in existence. The bridge in this case was in existence as early as 1930, prior to the creation of the bridge permitting system. Therefore, section 171.9(a) does not impose a duty on the government to repair or maintain the bridge.[1]
 
 
 9
 Riebe contends the trial court erred in failing to hold the government liable for its failure to place adequate warnings or weight restrictions at or near the bridge. Riebe relies primarily upon Tanguma v. Yakima, 18 Wash.App. 555, 569 P.2d 1225 (1977), for this proposition. Tanguma involved an accident on a bridge constructed by the federal government and accepted by Yakima County. The court imposed a duty upon the county to post signs warning of any inherently dangerous or misleading condition. Id.
 
 
 10
 Tanguma is inapposite. In Tanguma, the bridge was built by the federal government and turned over to Yakima County, which accepted it into the Yakima County system of roads. In the present case, the trial court found that the BIA did not build the bridge and never accepted it as part of its system of roads.
 
 
 11
 Riebe argues the trial court erred in finding that the government was not negligent in repairing the bridge. We reject this argument. The trial court found that the government was not negligent, and this finding is not clearly erroneous. The WIP employee who replaced the planking on the surface of the bridge tested the timbers underneath and discovered the wood was good. The employee then replaced the rotting planking with new wood. As the trial court noted in its opinion, there is simply no evidence the bridge was not structurally sound when it was repaired by WIP employees.
 
 
 12
 Riebe contends the trial court erred when it found the United States was not responsible for the bridge under its premises liability cause of action. We disagree. To establish its premises liability claim, Riebe had to prove that the United States was the owner of the bridge. See Egede-Nissen v. Crystal Mountain, Inc., 93 Wash.2d 127, 132-133, 606 P.2d 1214 (1980). Riebe did not prove this. To the contrary, there was substantial evidence the bridge was not owned by the BIA. Apart from the fact that there was no evidence as to who built the bridge, the BIA did not include it in its inventory book as part of its system of roads. On the other hand, the bridge is identified on Yakima County records as a "private" bridge. The trial court's finding that the BIA did not own the bridge was not clearly erroneous.
 
 
 13
 Riebe argues that the government acquired the bridge through adverse possession. In order to establish ownership by adverse possession, the claimant must show exclusive, actual and uninterrupted, open and notorious, and hostile possession throughout the statutory period under claim of right made in good faith. Chaplin v. Sanders, 100 Wash.2d 853, 857-861, 676 P.2d 431 (1984). The "claim of right" element requires that the claimant treat the property as if it were its own against all others. Id. The government's use of the bridge was neither exclusive nor under claim of right. All the residents to the south of the bridge used it for access to their properties. WIP employees consistently have denied ownership when requested by residents to perform repairs. A feed lot owner repaired the bridge when WIP employees refused to perform the work. The BIA did not acquire the bridge through adverse possession.
 
 
 14
 Riebe argues that the BIA acquired the bridge as a fixture to its trust land. To determine whether personal property constitutes a fixture, the court must consider the objective intent of the affixing party to make a permanent accession to the real estate. Christensen Group v. Puget Power, 44 Wash.App. 778, 781-783, 723 P.2d 504 (1986). Riebe was unable to show when the bridge was constructed or by whom. Because there is no evidence as to the circumstances existing at the time the bridge was affixed to the land, it is impossible to determine the intent of the affixing party. Thus, the trial court correctly held that the government did not acquire the bridge as a fixture.
 
 
 15
 Finally, Riebe alleges the BIA should be liable for the bridge because it is on government trust property and is located over the BIA's irrigation canal right-of-way. Riebe relies primarily upon Bullock v. Yakima Valley Transportation Company, 108 Wash. 413, 184 P. 641 (1919), for this proposition. In Bullock, a transportation company acquired a right-of-way across a public highway and built a railroad crossing there. Id. at 416. In order to build the crossing, the company altered a portion of the sidewalk running parallel with the highway. Id. Following construction of the crossing, the company performed no future maintenance on the sidewalk. Id. The plaintiff was injured while walking over that portion of the sidewalk altered by the transportation company. Id. In finding the company liable, the court held a railroad company has a duty "to maintain that portion of the highway which it actually occupies and uses, including such approaches to the railroad tracks as are necessary in order to make a reasonably safe crossing." Id. at 433. Riebe argues the same reasoning applies to the facts of this case.
 
 
 16
 We reject this argument because Bullock is inapposite. In Bullock it was clear the transportation company had cut through the public sidewalk in constructing its crossing. Id. at 416. Because the company had constructed the crossing through the public sidewalk, it assumed a duty to maintain the sidewalk. Here, there was no evidence the government constructed the bridge or that the irrigation canal, when it was installed, cut through a public right-of-way.
 
 
 17
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Circuit Rule 36-3
 
 
 [1]
 Riebe contends the trial court erred in finding the bridge was not a necessary part of WIP's irrigation system. Because we find 25 C.F.R. Sec. 171.9(a) inapplicable, we need not reach the question whether the bridge was a necessary part of WIP's irrigation system