[No. 4-39768-1.    Division One.    December 31, 1969.]
Panel 2

JOE JOHNSON, *Respondent,* v. MOBILE CRANE CO., *Appellant.*

*Joseph C. McKinnon,* for appellant.

*Jackson, Ulvestad & Goodwin* and *Daniel G. Goodwin,* for respondent.

UTTER, J.—Joe Johnson brought an action for personal injuries against Mobile Crane Co., hereinafter referred to as Mobile. Mobile appeals from a jury verdict in favor of Johnson.

Error is assigned to the court's refusal to submit the issue of Johnson's contributory negligence to the jury and conversely to the action of the court in submitting the issue of Mobile's negligence to the jury. Mobile also complains of several evidentiary rulings of the trial court and of its actions in accepting an allegedly inconsistent jury verdict.

Johnson was employed as a "bucket man" by Sellen Construction Company at a construction site on Columbia Street in Seattle when this accident occurred. Mobile owned and operated a crane used at the construction site to carry cement brought to the site in cement trucks to the upper floors of the building. The crane operator and oiler were Mobile's employees. As the crane lowered the empty bucket from the upper floors of the building to the street level, Johnson would hang onto the heavy bucket and guide it to the cement truck to be refilled. This required him to stand in a position where he could see the bucket at all times. The cement truck was parked in the street and Johnson would work in an area to the immediate rear of the truck between the curb and the side of the truck exposed to the traffic.

On the date of the accident, the crane operator's view was blocked by some construction shacks and he could not see Johnson at all times nor could he see westbound traffic at all points on Columbia Street. No barricades had been posted to stop traffic from entering the construction area nor was a flagman present to direct traffic.

As Johnson was waiting for the empty bucket to reach him, a taxicab entered the area westbound on Columbia Street and approached Johnson from the rear. The crane oiler was standing near the cement truck during the accident and saw the cab enter the area and approach Johnson, but he did not give any warning to Johnson. As the bucket swung towards him, moments before the accident, Johnson noticed the cab approaching him. Believing he was trapped between the cab and the bucket, Johnson turned his back to the bucket to avoid being struck in the face. The bucket struck his back. He sustained injuries to his back and knees.

Mobile argues the court erred in removing the issue of contributory negligence from the jury inasmuch as it says Johnson allegedly knew as much of the danger of working in the streets and the hazards of traffic as Mobile did, and

that his alleged violations of the statute and safety regulations established at least a jury question of negligence, if not negligence per se.

■ Contributory negligence or fault, as it is sometimes called, is described by the Restatement (Second), Torts § 463 (1965) as "conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, which is a legally contributing cause cooperating with the negligence of the defendant in bringing about the plaintiff's harm." It is conduct which involves an undue risk of harm to the actor himself. Restatement (Second), Torts § 463(b) (1965); *Bauman v. Complita,* 66 Wn.2d 496, 403 P.2d 347 (1965).

The plaintiff is required to conform to the standard of the reasonable man of ordinary prudence under the same or similar circumstances. Restatement (Second), Torts § 464 (1965). This does not mean he must act the same as the defendant in any given situation. As noted in W. Prosser, Law of Torts § 64 (3d ed. 1964):

> Too many varying factors may affect what the standard of the reasonable man requires, to permit any such rigid rule. The defendant may have more information than the plaintiff as to the risk, or by reason of the enterprise in which he is engaged may be required to obtain it; or the risk of harm to others may be more apparent, or apparently more serious, than the risk to the actor himself; . . . or the plaintiff may be justified in relying upon the defendant to protect him; . . .

(Footnotes omitted.)

■ The court in *Hughey v. Winthrop Motor Co.,* 61 Wn.2d 227, 377 P.2d 640 (1963) emphasized that a contributory negligence instruction is not required in every negligence case and reiterated it is a matter of law for the defendant to prove by substantial evidence if the issue is to be presented to the jury.

Contributory negligence is an affirmative defense. The burden of proving it rests on the defendant. As with any matter where the trial court must remove a factual issue

from the jury's consideration, the court is required to accept the truth of all evidence favorable to the party it holds against and all inferences which could reasonably be drawn from such evidence. The trial court can withdraw an issue from the jury only if it can say, as a matter of law, that there has been no substantial evidence to support the claim. *Carrieri v. Bush,* 69 Wn.2d 536, 419 P.2d 132 (1966).

The nature of Johnson's work was such that he was required to keep his attention at all times directed to the bucket while it was descending toward him in the air. When it was low enough for him to reach, it required his total effort to control it. Under these circumstances, reasonable men could not differ on the conclusion that Johnson was not guilty of contributory negligence in either failing to observe the cab until it was close enough to cause him to turn or in his choice of turning his head to avoid being struck in the face by the cement bucket when he believed he could back up no further.

The other act of Johnson which Mobile asserts should have been submitted to the jury on the issue of his contributory negligence was his decision to work in an area where a car might come so close without warning that he would be unable to safely and timely move to avoid being struck by the moving concrete bucket.

The burden was specifically on Mobile to show that Johnson failed to conform to the standard of the reasonable man under the same or similar circumstances. This man would have had the right to rely on his employer to exercise reasonable care to furnish him a reasonably safe place to work. The workman is not barred from recovery merely because he knew or should have known of the dangerous condition negligently created or maintained. He is charged with contributory negligence of contributory fault only if his voluntary exposure to the risk is unreasonable under the circumstances. *Siragusa v. Swedish Hosp.,* 60 Wn.2d 310, 319, 373 P.2d 767 (1962).

Mobile has not produced substantial evidence that Johnson failed to exercise reasonable care for his own safety or

that he unreasonably relied on others to provide him a safe place to work. There was no proof that Johnson was aware from other similar instances that such an accident might occur. Mobile Crane's oiler was at the side of the cement truck and in a position to warn Johnson if there was apparent danger from cars coming down the street.

■ Mobile argues certain statutes and safety regulations establish standards which Johnson allegedly violated and therefore made him guilty of negligence as a matter of law. It is argued that RCW 47.36.201 applies to Johnson. The statute does require posting signs or flagmen at thoroughfare work sites. The violation of the statute is not a basis for finding Johnson guilty of negligence per se. The statute if found in the chapter titled "Traffic Control Devices." The statute was intended to provide for the regulation of automobile traffic, not set safety standards for workmen, and Johnson is not in that class of persons for whom the statute was enacted. Its violation therefore is not negligence per se. *White v. Peters,* 52 Wn.2d 824, 329 P.2d 471 (1958).

Mobile also argues Johnson violated § A-34 of the Safety Standards for Construction Work and that RCW 49.16.040 required compliance with these standards as a matter of law. RCW 49.16.040 provides:

> For the purposes of [the safety standards promulgated], it shall be the duty of every workman to cooperate with his employer in all efforts for safety in respect of a safe place to work, safety devices, and safeguards, . . . and to on his part comply with all standards of safety established for his work . . .

Section A-34 of the Safety Standards for Construction Work does provide for signs, flagmen or both and barricades and lights when necessary where construction work is on a thoroughfare and the work interferes with travel. Section A-1 of that code, however, delineates the responsibility for compliance with § A-34 and provides:

> The supervisor and foreman on the job shall be directly responsible for the compliance of his crew with safety regulations and for the safety of his men.

Johnson was not a foreman or supervisor and was not directly responsible for compliance with the safety regulations. The regulations do not place the responsibility for compliance with their provisions on him individually and there is no showing he failed to cooperate with his employer or failed to comply with standards of safety established for his individual work.

Johnson's conduct did not constitute negligence per se and Mobile's contention to the contrary is erroneous.

Mobile complains of the submission of the question of its negligence to the jury, claiming there were no facts, as a matter of law, to establish negligence. The same test mentioned earlier in *Carrieri* must be applied to facts favoring Johnson. We have examined the record and find facts sufficient for the jury to find Mobile negligent. Without discussing the other theories of negligence, the jury was entitled to find Mobile negligent in placing the crane in a position where the crane operator could not see or observe Johnson and traffic proceeding into the area where Johnson was required to work under the circumstances existing at the time the accident occurred.

Mobile claims even if it was negligent, Johnson's knowledge of the hazards equaled that of Mobile's and cites the cases of *Hawkins v. Palmer*, 29 Wn.2d 570, 188 P.2d 121 (1947) and *Brucker v. Matsen*, 18 Wn.2d 375, 139 P.2d 276 (1943) to sustain its contention that the question of their negligence should not have been submitted to the jury. These were cases where the facts clearly supported the conclusion that plaintiffs' knowledge of the dangers resulting in their injuries equaled that of the defendants. The facts in this case do not establish such a certainty and for reasons we have set out in our discussion of contributory negligence, Mobile's claim is not well founded.

Mobile requested instructions which would have informed the jury the oiler had no duty to warn Johnson of the approaching cab. The court refused to so instruct the jury and acted properly. The job superintendent for the

construction project indicated it was the duty of the crane operator to operate the crane in such a manner as not to injure any of the workmen. The improper positioning of the crane, which resulted in the crane operator's inability to see approaching traffic at all times, could have been found to be a violation of this duty and, in turn, to have been negligence. When Mobile's own negligence was arguably responsible for Johnson's situation, the duty arises to make a reasonable effort to give assistance and avoid further harm. W. Prosser, Torts § 54 (3d ed. 1964) and cases cited therein.

It is contended by Mobile that the trial court made numerous errors in ruling on admissibility of evidence. A complaint is made the court refused to allow questions concerning custom and practice in crane rentals. The record reflects the court allowed extensive testimony in this area and no prejudice to Mobile is shown by the court's rulings.

The court refused to allow Mobile, on cross-examination, to examine a doctor on a matter beyond the scope of the direct examination. The trial court has wide discretion in determining the amount of latitude granted in the application of this rule and did not abuse that discretion. *State v. Jeane*, 35 Wn.2d 423, 213 P.2d 633 (1950).

Mobile complains the court erred in failing to allow them to introduce hospital records which included a diagnosis of alcoholism as a disease affecting Johnson. The records contained opinions, upon which other persons qualified to make the same record might have differed, and did not relate solely to an act, condition or event. These matters were properly excluded. *Young v. Liddington,* 50 Wn.2d 78, 309 P.2d 761 (1957). There is no showing the improper matters in the hospital records were segregated and removed from those matters which were properly admissible. The trial court did not err in refusing to admit the records.

Mobile next objects to the court allowing testimony that established the fee for services charged the Depart-

ment of Labor and Industries by Johnson's doctor was less than would have been charged to a private patient for the same services. The testimony was offered to show that treatment was extensive and, if the jury should consider the size of the medical bill as an indication of the seriousness of the injuries, that a larger bill for services would normally have been rendered had the patient been paying for his own care. Complaint is also made that the trial court abused its discretion in refusing to allow Mobile to use hospital admission records in questioning Johnson's doctor which established Johnson had suffered a beating some months after his injury, resulting in a scalp laceration. Mobile was attempting to use this to have Johnson's doctor speculate Johnson might have injured his knee as a result of the beating. The court refused to allow this line of inquiry. These matters involved questions of relevancy and are ordinarily within the discretion of the trial judge. *State v. Birch,* 183 Wash. 670, 49 P.2d 921 (1935). While we might not have made the same rulings, we cannot say that discretion was abused.

■ Appellant claims the jury verdict lacked the ten votes required by RCW 4.44.380. An interrogatory was submitted to the jury asking if the crew members of the crane were loaned servants. The jury, by a vote of ten to two, returned a negative answer with jurors 10 and 12 dissenting. The jury then returned a verdict for the plaintiff ten to two. Juror 12 voted for the general verdict. Appellant argues juror 12's votes were inconsistent and the jury verdict had the support of only nine votes. In *Bullock v. Yakima Valley Transp. Co.,* 108 Wash. 413, 184 P. 641, 187 P. 410 (1919) the court held the votes of any ten jurors were sufficient to support a jury finding. Consistent jury voting was required in *Fleischhacker v. State Farm Mut. Auto Ins. Co.,* 274 Wis. 215, 79 N.W.2d 817 (1956), but this case was decided under a Wisconsin statute which specifically requires consistent jury voting. The other cases were decided under statutes similar to RCW 4.44.380. *Nelson v. Superior Court,* 26 Cal. App. 2d 119, 78 P.2d 1037 (1938); *Plaster v.*

*Akron Union Passenger Depot Co.,* 101 Ohio App. 27, 137 N.E.2d 624 (1955); *Ellison v. Seelbrede,* 2 Ohio Misc. 164, 204 N.E.2d 262 (1965); *Munger v. State Indus. Accident Comm'n,* 243 Ore. 419, 414 P.2d 328 (1966) and *Clark v. Strain,* 212 Ore. 357, 319 P.2d 940 (1958). It was recognized in *Munger* that under *Bullock,* Washington allowed inconsistent jury voting. We believe *Bullock* is controlling on this issue. Appellant concedes *Bullock* allows inconsistent voting but asks us to clarify its holding as requiring consistent jury voting. Such clarification would be inconsistent with the holding in *Bullock.*

The judgment of the trial court is affirmed.

HOROWITZ, A. C. J., and STAFFORD, J., concur.

——————

Petition for rehearing denied March 12, 1970.