[No. 25454-5-I.   Division One.   September 9, 1991.]

EDWARD L. BENNETT, *Respondent*, v. JAMES H. MALONEY,
ET AL, *Defendants*, DAVID L. MICHIE, ET AL,
*Appellants.*

*Christopher B. Wells, Michael B. King*, and *Lane Powell Spears Lubersky*, for appellants.

*John P. Evans* and *Williams, Kastner & Gibbs*, for respondent.

BAKER, J. — David L. Michie appeals the judgment n.o.v. entered against him for breaches of duty as an attorney escrow agent in a real estate securities transaction, alleging numerous errors. Since we find one of those errors to be

clearly dispositive and to require reversal, we do not address the remaining assignments of error.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

Respondent Masonic Lodge of Washington (Lodge), acting through its Grand Secretary, Edward L. Bennett, made two loans through defendant First Washington Financial, Inc. (FWF), a real estate securities broker. The opportunity for the investments was brought to the Lodge's attention by a member of the Lodge's finance committee, William Greer, who was also a commissioned sales agent for FWF. Both loans related to proposed condominium units on property known as "Marina East" in Kirkland, to be developed by First Washington Developments, Inc. (FWD), a wholly owned subsidiary of Previs Equipment Company, Inc. The Lodge informed FWF that it only wished to make loans that were backed by performance bonds and secured by first deeds of trust.

The borrowers solicited a loan of $675,000, of which the Lodge initially funded $200,000 while several other investors funded the remainder. The loan was bonded and each investor received a proportionate interest in a first deed of trust securing the loan. The property was appraised at $1.1 million. The Lodge's Grand Secretary, Bennett, asked Warren "Bud" Gilbert, one of the Lodge's elected officials who was an attorney, to review the loan documents. Gilbert reviewed the documents and the Lodge entered into the loan.

Greer subsequently approached Bennett and said that one of the original investors had dropped out, and that the Lodge had an opportunity to invest an additional $150,000 in the loan. This "second" loan was not bonded and was secured only by a second deed of trust, subject to the first

---

[1]Likewise, we do not address respondent's cross appeal, which respondent stated would only become relevant in the event a new trial were ordered for some other reason.

deed of trust securing the first loan. The loan documents revealed these facts; however, the specific offering circular erroneously stated that the second loan would be bonded, and Greer represented the same to Bennett. Greer also represented that the terms of the second loan would be the same as the first because it was part of the first loan.

There was no testimony that Bennett actually read the specific offering circular or any other document related to the second loan, and he testified that he relied strictly on Greer's representations in entering into it. (Greer testified that he himself never asked to see the documents on the second loan because it was supposed to be part of the first loan.) Nevertheless, Bennett signed the loan documents, including a disclosure and acknowledgment form stating he had read all of the loan documents and offering circulars. There was no evidence that the documents on the second loan were reviewed by Gilbert or any other attorney on behalf of the Lodge. The Lodge funded $140,000 of the $150,000 second loan. The second loan is the subject of this lawsuit.

In addition to the discrepancy concerning the bond, the legal description of the property in the deeds of trust was different than the description in the appraisal attached to the specific offering circulars on both loans. A waterfront lease was missing from the deeds of trust. FWD obtained the waterfront lease 4 months after the second loan closed.

A discrepancy also existed in the identity of the borrowers. While the specific offering circular on the second loan stated that the Previs Equipment Company, Inc., and FWD would be the borrowers, with Randy and Katie Previs as individual guarantors, the Previs Equipment Company, Inc., did not sign the second promissory note.

Both loan transactions were closed by appellant Michie, then a practicing attorney, as escrow agent. Michie had done work for FWF in the past, including preparing its general offering circular[2] and serving as escrow agent on

---

[2]Michie did not prepare the specific offering circular for the subject loans.

other transactions. Michie did not disclose this relationship to the Lodge, nor did he point out the discrepancies between the specific offering circular and the loan documents or advise the Lodge to obtain independent counsel.

FWF's general offering circular, drafted by Michie, states:

> *Escrow Instructions.* All transactions are closed through a licensed escrow agent or law office *to protect Lender's interest.* The escrow instructions require the closing office to *verify that the Borrower and FIRST WASHINGTON have performed all of their obligations* prior to the Borrower receiving a disbursement of funds.

(Italics ours.) Exhibit 2, at 4. The general offering circular goes on to state that loans would be closed

> [i]f the Lender is satisfied *after receiving full disclosure of all relevant facts* pertaining to the transaction and FIRST WASHINGTON is satisfied with the Lender's suitability for the investment . . ..

(Italics ours.) Exhibit 2, at 4.

None of the Lodge officials testified to having any contact with Michie, nor was Michie informed of the Lodge's desire to restrict its investments to those backed by bonds and secured by first deeds of trust.

The borrowers never made a payment on the second loan. The Lodge brought suit against FWF and its owners as well as Michie and his wife (only the Michies are appellants here).[3] On Michie's motion for summary judgment the trial court dismissed the Lodge's claim under the Consumer Protection Act. The trial court denied Michie's motion for a directed verdict and submitted the claims of negligent misrepresentation, attorney malpractice, fraud and securities law violations to the jury. The jury found Michie not liable

---

[3]Outside the presence of the jury, Michie offered to prove that the Lodge first obtained a judgment against FWD and the Previses for $140,000 plus interest, but the judgment was uncollectible. (Michie wished to prove this in order to show that the absence of the Previs Equipment Company, Inc., as a maker of the note did not cause the Lodge any damage.) The offer of proof was rejected and the evidence excluded.

on the securities claim but returned a verdict of $70,000 for the Lodge on its other claims.

The court granted the Lodge's motion for a judgment n.o.v., increasing its award to $140,000 plus prejudgment interest, and denied Michie's motion for a judgment n.o.v. Michie appealed the judgment and the Lodge cross-appealed the dismissal of its Consumer Protection Act claim.

## ANALYSIS

The trial court held that the proper measure of damages was the amount of the promissory note plus interest. Michie argues that the proper measure of damages was the value of the security interest in the property that was lost through Michie's misconduct.

The trial court apparently treated the Lodge's claim as if it were for rescission rather than negligence and fraud. In the court's oral opinion denying Michie's motion for a directed verdict, the court stated that the Lodge wanted to "rescind" its agreement and "get their money back". The court further stated:

> They didn't bargain for a right to foreclose. They bargained for a $140,000 note that was going to collect 17 percent interest and be paid in due course, and they did not get that.
> Therefore, their damages are the value of what they didn't get, which is the $140,000 note, and that was going to be paid in a certain fashion.

However, in receiving a security interest in real estate the Lodge did, in fact, "bargain for a right to foreclose", although it would have preferred to receive payment on the note or the nonexistent bond and not have to exercise its bargained-for right to foreclose.

In *Bowers v. Transamerica Title Ins. Co.*, 100 Wn.2d 581, 593, 675 P.2d 193 (1983), the court held that where an escrow agent failed to inform sellers entering into an unsecured sale of real property of the advisability of obtaining independent counsel, the measure of their damages was the

value of the security interest they would have received had they been properly advised.

Similarly in *Andersen v. Northwest Bonded Escrows, Inc.*, 4 Wn. App. 754, 759-60, 484 P.2d 488, *review denied*, 79 Wn.2d 1010 (1971), the court held that where a security interest in real property was lost through an escrow agent's negligence in failing to advise the sellers of the peril of not recording their mortgage, the measure of damages was the security interest they lost. *See also Tilly v. John Doe*, 49 Wn. App. 727, 731-32, 746 P.2d 323 (1987) (value of security interest lost through attorney's negligence in failing to perfect is not the value of the property, but the amount plaintiff would have collected had a perfected security interest been obtained), *review denied*, 110 Wn.2d 1022 (1988); *Sigman v. Stevens-Norton, Inc.*, 70 Wn.2d 915, 920-21, 425 P.2d 891 (1967) (in an action for fraud in real estate loan transaction, measure of damages is not restoration of the purchase price, but rather the difference between the value of the security had it been as represented and the actual value of the security received); *Ferrell v. Cronrath*, 67 Wn.2d 642, 645, 409 P.2d 472 (1965) (where attorney escrow agent filed contract in wrong county, thereby losing security interest, damages are loss of the security interest).

The Lodge argued to the trial court that the security interest it lost through Michie's misconduct was the amount of a hypothetical bond, though it presented no evidence as to what the amount would have been. Michie argued that proof of damages was not complete without evidence of the value of the security interest the Lodge *did* receive — the second deed of trust. He characterizes the correct measure of damages as the difference between the value of the security interest the Lodge would have received but for Michie's misconduct (bond plus second deed of trust with waterfront lease) and the value of the security interest it actually did receive (second deed of trust without waterfront lease). He

also argued that the Lodge failed to prove the threshold issue of uncollectibility of the underlying note.

Although we have serious doubts whether the Lodge presented sufficient proof on the threshold issue of uncollectibility, our review of the record reveals absolutely no evidence at trial concerning the value of the second deed of trust, with or without the waterfront lease. Under the cases cited herein, the Lodge therefore failed to prove damages and the trial court erred in denying Michie's motion for a directed verdict on this issue.

■ The Lodge argues that Michie waived any error by failing to except to the trial court's refusal to give his instruction on the measure of damages. We disagree. After the court ruled against Michie on the measure of damages in the context of his motion for a directed verdict, Michie's counsel stated during a discussion of the jury instructions "we did not see an instruction regarding the measure of damages for inadequate collateral, which is the plaintiff's claim." The court refused to give Michie's proposed instruction on the measure of damages, commenting that based on its previous ruling the damage, if any, was the amount of the note. That Michie later failed to except to the lack of his proposed instruction when the court invited his exceptions is insufficient to constitute a waiver of this issue given the extensive discussion of the issue already on the record.

The matter is reversed and remanded for entry of an order dismissing the Lodge's claims with prejudice.

GROSSE, C.J., and KENNEDY, J., concur.

Review denied at 118 Wn.2d 1011 (1992).