[No. 37012-0-I.   Division One.   June 9, 1997.]

ESCA Corporation, et al., *Respondents*, v. KPMG
Peat Marwick, *Appellant*.

Wn.2d 863, 505 P.2d 790 (1973) (fees awarded where case voluntarily dismissed
by plaintiff).

*Evan L. Schwab, Lucy P. Slyngstad Isaki, Margarita V. Latsinova*, and *Bogle & Gates, P.L.L.C.*; and *Roger A. Leishman*, for appellant.

*Bruce E.H. Johnson* and *Davis Wright Tremaine*; and *Jerry N. Stehlik* and *Bucknell Stehlik*, for respondents.

GROSSE, J. — We hold that the principle of comparative fault applies to a cause of action for negligent misrepresentation. In so doing, we affirm a verdict awarding Seattle First National Bank (Seafirst) damages from KPMG Peat Marwick (KPMG) for negligence in the preparation of an audit, reduced by 60 percent, the percentage of fault attributed to Seafirst for its own negligence. Additionally, we reject KPMG's challenge to the verdict on the basis of the jury's inconsistent answers to questions posed in the instructions. The possibility of the inconsistency was inherent in the instructions, instructions offered by KPMG. In the context of this trial, those instructions became the law of the case such that no error could result from the inconsistent response.

As to KPMG's claims on appeal challenging the damage award to ESCA Corporation (ESCA), we agree that the

trial court erred in denying KPMG's motion for a directed verdict. ESCA's proof of damages was incomplete, conclusionary, and based on speculation and conjecture.

On the cross appeal, we affirm the dismissal of Seafirst's claim for damages for credit extended at an earlier date because it had no right to rely on the draft audit.

## FACTS

ESCA, a Bellevue computer software company, hired KPMG to audit its 1988-89 financial statements. The final audit stated that the company's net income exceeded $1.4 million, an amount KPMG said fairly represented the financial position of ESCA. KPMG failed to detect that a Westinghouse (WSL) purchase order, worth approximately $2.5 million, had contingencies and was not a "firm" purchase order from which the company could recognize income.[1] Using generally accepted accounting principles, most of the WSL purchase order revenue should not have been included in ESCA's fiscal year (FY) 1988-89. As a consequence, ESCA's financial statement, upon which KPMG gave a favorable opinion, showed record earnings for FY 1989. Had KPMG performed the audit correctly, it would have shown a reversal of income trend and a record loss.

Seafirst's Claim. Seafirst claims it detrimentally relied on KPMG's audit when it approved ESCA's request to renew its line of credit. Seafirst maintains that it relied on a draft of the audit when it increased ESCA's line of credit from $6 million to $8 million. Before the renewal date, Seafirst also received a reporting package from ESCA setting forth ESCA's first quarter results. The reports indicated a large loss for the quarter. Within days of approving ESCA's loan at the $8 million level, the loan was downgraded by Seafirst, and it also recognized that ESCA

---

[1]There was testimony from Debra Beatenbough, ESCA's financial officer, that over the following years the purchase order was eventually realized and the income recognized.

was in default. Even with this information Seafirst did not call or renegotiate the loan. In fact, Seafirst disbursed over $1.4 million to ESCA after this downgrade.

KPMG proposed jury instructions stating the elements of negligent misrepresentation and the defense of contributory negligence under the RESTATEMENT (SECOND) OF TORTS § 552A (1977). KPMG's proposed instruction 13 read as follows:

> With respect to Seafirst's claim for negligent misrepresentation, the law provides that it is a complete defense if Seafirst [itself] was negligent in relying on information supplied by Peat Marwick.

> Peat Marwick has the burden of proving that Seafirst was negligent in relying on information supplied by Peat Marwick.

> If you find from consideration of all the evidence that this affirmative defense has been proved, your verdict should be for Peat Marwick on Seafirst's claim.

The trial court rejected the instructions and the accompanying verdict form.

The jury returned a verdict for Seafirst but found that it was 60 percent contributorily negligent in causing its own damages. KPMG moved for judgment as a matter of law, arguing that the finding of contributory negligence barred any recovery by Seafirst under the RESTATEMENT. The motion was denied. The jury found total damages amounting to $2,505,000. The award was reduced by the 60 percent contributory negligence and judgment was entered in favor of Seafirst in the amount of $1,002,000.

ESCA's Claim. ESCA claimed it relied on the overstated income to continue its course of spending for research and development as well as other projects. It alleges that once it learned of its poor financial condition, ESCA took drastic action by releasing 65 of its employees, and shutting down its research and development department (R & D). Had it known that the revenue from the WSL purchase order should not have been recognized by the time the audit

was completed, ESCA would have taken action earlier. As a result, the company sought damages in the amount of $1,947,100, representing four months of salaries, excess variable expenses, including travel, entertainment, parts and supplies, and training. These were expenses attributable to the 65 employees released in May 1990, but also included "avoidable" equipment purchases, leasehold expenses, and other miscellaneous expenses.

At the close of ESCA's case, KPMG moved for a directed verdict, arguing that ESCA failed to prove its damages because it failed to show a reasonable basis for calculating its loss. The trial court denied the motion in most respects. The jury determined that ESCA's damages were $1,402,100, the entire amount of its compensation and excess variable expense claims, without any reduction for value of services or benefits received. The jury found ESCA 30 percent contributorily negligent and the trial court entered judgment in favor of ESCA for $981,470.

Seafirst's Cross Appeal. During trial KPMG moved for a partial summary judgment, asserting that Seafirst's actions in reliance on a draft audit report cannot, as a matter of law, be the basis of a claim against KPMG. The trial court agreed. Seafirst appeals this ruling on cross appeal.

## DISCUSSION

Seafirst's Verdict. KPMG claims Seafirst was barred from recovery of damages due to any negligent misrepresentation when the jury found it to be 60 percent contributorily negligent in causing its injury. RESTATEMENT (SECOND) OF TORTS § 552(1) (1977) describes negligent misrepresentation. It states:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reason-

able care or competence in obtaining or communicating the information.

RESTATEMENT § 552A equates justifiable reliance with a lack of contributory negligence. It declares:

> The recipient of a negligent misrepresentation is barred from recovery for pecuniary loss suffered in reliance upon it if he is negligent in so relying.

Additionally, the comment to § 552A sets forth:

> a. The recipient of a *fraudulent* misrepresentation who justifiably relies upon it is not barred from recovery by his contributory negligence in doing so. (See § 545A). But when the misrepresentation is not fraudulent but only *negligent*, the action is founded solely upon negligence, and the ordinary rules as to negligence liability apply. Therefore the contributory negligence of the plaintiff in relying upon the misrepresentation will bar his recovery. This means that the plaintiff is held to the standard of care, knowledge, intelligence and judgment of a reasonable [person], even though he does not possess the qualities necessary to enable him to conform to that standard. (See § 464.)

(Emphasis added.)

Washington cases have followed the RESTATEMENT with respect to the *elements* of negligent misrepresentation.[2] Thus, a plaintiff suing for negligent misrepresentation must prove that it justifiably relied upon information negligently supplied by the defendant.[3]

To date, Washington courts follow the RESTATEMENT view that justifiable reliance is equivalent to a lack of contributory negligence. "As a result, contributory negligence is a complete bar to recovery, rather than a trigger that

---

[2]*Schaaf v. Highfield*, 127 Wn.2d 17, 22, 896 P.2d 665 (1995); *Condor Enters., Inc. v. Boise Cascade Corp.*, 71 Wn. App. 48, 52, 856 P.2d 713 (1993).

[3]*Condor Enters.*, 71 Wn. App. at 52.

causes the fault of plaintiff and defendant to be compared and apportioned."[4]

The RESTATEMENT commented on this effect in 1977:

> With respect to physical harms caused by negligence, the old rule that contributory negligence is a complete bar to liability based on negligence is yielding to a trend toward comparative negligence. It is debatable whether this development should affect liability for pecuniary harm as well.

RESTATEMENT § 552A, cmt. *b*.

While various jurisdictions have applied comparative negligence, not contributory negligence in negligent misrepresentation cases,[5] the Washington Supreme Court has not yet done so.[6] The last pronouncement by our State Supreme Court was in the *Skagit State Bank* case. There, a case mainly decided under contract law, the court discussed fraudulent misrepresentation and negligent misrepresentation in conjunction with contributory negligence as a defense stating:

> As negligence becomes an increasingly recognized basis of liability for misrepresentation the question whether contributory negligence is or should be a defense will become increasingly important. The decisions to date [1987] are unanimous in recognizing the defense and this accords with the view of commentators and the American Law Institute.[7]

Seafirst persuasively argues that RCW 4.22.005-.925 mandates comparative negligence in *all* cases involving

---

[4]*Condor Enters.*, 71 Wn. App. at 52-53 (citing *Skagit State Bank v. Rasmussen*, 109 Wn.2d 377, 386, 745 P.2d 37 (1987) and *J&J Food Ctrs., Inc. v. Selig*, 76 Wn.2d 304, 311, 456 P.2d 691 (1969)).

[5]*Condor Enters.*, 71 Wn. App. at 52 n.1 (citing *Robinson v. Poudre Valley Fed. Credit Union*, 680 P.2d 241, 243 (Colo. Ct. App. 1984); *Florenzano v. Olson*, 387 N.W.2d 168, 175-76 (Minn. 1986); *Bottrell v. American Bank*, 237 Mont. 1, 20-21, 773 P.2d 694, 706 (1989); *Pastor v. Lafayette Bldg. Ass'n*, 567 So. 2d 793, 796-97 (La. Ct. App. 1990)).

[6]*Condor Enters.*, 71 Wn. App. at 52 n.1 (citing *Skagit State Bank v. Rasmussen*).

[7]*Skagit State Bank*, 109 Wn.2d at 386 (quoting Fleming James, Jr. & Oscar S. Gray, *Misrepresentation — Part I*, 37 MD. L. REV. 286, 314 (1977)).

fault, including those involving negligent misrepresentation.[8] We recognize our holding is contrary to that of *Condor Enterprises*; however, there the court acknowledged the probable validity of the argument, but indicated that neither party in that case made the argument.[9]

Accordingly, we hold that contributory negligence is no longer a complete bar to recovery in negligent misrepresentation cases. The comparative negligence statute, RCW 4.22.005-.925, and the cases that follow, indicate the Legislature has determined that comparative fault shall apply to all actions based on "fault."[10] Seafirst's being found to be contributorily negligent does not bar recovery.

Next, KPMG claims the trial court erred in accepting the jury's verdict when, after polling the jury, the responses to the questions on the special verdict form were inconsistent on interdependent questions. KPMG argues the verdict is irreconcilable and must be overturned. The poll of the jury indicated that 10 jurors agreed that KPMG

---

[8]*Condor Enters.*, 71 Wn. App. at 53 n.1 (citing Gregory C. Sisk, *Interpretation of the Statutory Modification of Joint and Several Liability: Resisting the Deconstruction of Tort Reform*, 16 U. Puget Sound L. Rev. 1, 130 nn. 560-68 (1992); *Lundberg v. All-Pure Chem. Co.*, 55 Wn. App. 181, 186, 777 P.2d 15 (Legislature has determined comparative fault doctrine shall apply to all actions based on "fault"), *review denied*, 113 Wn.2d 1030 (1989)).

[9]*See Condor Enters.*, 71 Wn. App. at 52 n.1.

[10]Since the adoption of the system of comparative negligence in 1974, appellate courts in this state have assumed the propriety of instructing juries regarding comparative negligence in cases where purely economic damages are sought. *See Hizey v. Carpenter*, 119 Wn.2d 251, 270, 830 P.2d 646 (1992) (legal malpractice claim); *Seattle W. Indus., Inc. v. David A. Mowat Co.*, 110 Wn.2d 1, 9, 750 P.2d 245 (1988) (engineering malpractice claim); *Horn v. Moberg*, 68 Wn. App. 551, 556, 844 P.2d 452 (legal malpractice claim), *review denied*, 121 Wn.2d 1025 (1993). *See also Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 795 P.2d 1143 (1990) (comparative fault applied in allocating damages for negligent real estate appraisal). There is argument to the contrary. However, the Legislature in adopting comparative negligence in all actions based on fault made the choice between competing policies.

*See* Eric R. Dinallo, *The Peculiar Treatment of Contributory Negligence in Accountant's Malpractice Action*, 65 N.Y.U. L. Rev. 329, 361 (1990); David L. Menzel, *The Defense of Contributory Negligence in Accountant's Malpractice Action*, 13 Seton Hall L. Rev. 292, 306 n.98 (1983). *See also, Wegad v. Howard St. Jewelers, Inc.*, 326 Md. 409, 605 A.2d 123, 125 (1992).

was negligent, but a different 10 jurors agreed that its negligence was the proximate cause of Seafirst's damages. All 12 then agreed in apportioning fault.

■■ KPMG claims the issue of requiring uniformity of a jury's responses on interdependent questions is one of first impression in Washington that was specifically left open by our Supreme Court in *Garcia v. Brulotte*.[11] However, the *Garcia* court did not reach the issue because there was no exception to the instruction given which required consistent votes of the same 10 jurors and therefore it became the law of the case. The same is true here.

Instruction 21 given to the jury was patterned after one of the alternatives found in the Washington Pattern Jury Instructions, WPI 1.11. The instruction was proposed by KPMG. Instruction 21 as given provided in part:

> When ten jurors have agreed upon an answer to a question, you should proceed to the next question . . . . To reach a verdict the same ten jurors need not agree upon each answer to the questions.

The pattern instruction provides the same:

> To reach a verdict the same ten jurors need not agree upon each answer to the questions.

The comment to WPI 1.11 suggests that the same jurors must agree on *some* questions:

> If there is no general verdict, it *may* be necessary that the same ten jurors must agree upon those interrogatories that are necessary to support a judgment of recovery and that a juror cannot return a verdict on one question that is inconsistent with the juror's own verdict on some other question.[12]

KPMG failed to offer the alternative instruction set out in

---

[11]*Garcia v. Brulotte*, 94 Wn.2d 794, 797-98, 620 P.2d 99 (1980).

[12]Well reasoned authorities hold that the same 10 jurors must agree as to both negligence and proximate cause, and only those jurors who so find may participate in the apportionment of comparative negligence. This is known as the "same juror rule" and is followed in a number of jurisdictions. *See O'Connell*

WPI 1.11, which states that "the same ten jurors must agree upon the answers to all questions." KPMG argues that that such an instruction would have been inappropriate because there were two separate plaintiffs and the instruction would require identical juror consensus on both ESCA's and Seafirst's claims. KPMG fails to recognize there would be no such requirement because instruction 2 told the jury it must consider the claims of ESCA and Seafirst separately.

Here, as in *Garcia*, KPMG proposed the instruction and therefore obviously did not except to it before the jury retired to deliberate. It became the law of the case. In *Garcia*, for similar reasons the reverse of what happened here took place. Consistent votes of the same 10 jurors were *required* under the *Garcia* court's instructions. Where the instruction to the jury so provided, and no exception was taken, it became the law of the case. There, the same 10 jurors did not agree and the verdict was overturned.[13]

KPMG argues it did not know the jury would become "confused" and render an inconsistent verdict until the verdict was announced, but before the jury was excused. Therefore, KPMG claims the court had the opportunity to clarify the instructions and send the jury back for additional deliberation before it was dismissed. Unfortu-

v. *Chesapeake & Ohio R.R. Co.*, 58 Ohio St. 3d 226, 569 N.E.2d 889, 894-98 (1991); *Veberes v. Knappton Corp.*, 92 Or. App. 378, 759 P.2d 279, 280 (1988). Early Washington cases disagree. In *Bullock v. Yakima Valley Transp. Co.*, 108 Wash. 413, 184 P. 641 (1919) and *Johnson v. Mobile Crane Co.*, 1 Wn. App. 642, 463 P.2d 250 (1969), *review denied*, 77 Wn.2d 963 (1970), the courts held that the special verdicts, under RCW 4.44.380, authorized 10 jurors to return a verdict, and the court's instruction authorizing any 10 of the jurors to answer the questions was in accord with the statute. This is known as the "any juror" rule. The *Johnson* case affirmed a seemingly inconsistent verdict and rejected the authority from other states, declaring that under *Bullock*, inconsistent voting is permitted in Washington. *Johnson*, 1 Wn. App. at 651. Because we hold the instructions were the law of the case, the issue of the "any juror rule" versus the "same juror rule" in Washington must wait for another day.

[13]*See also*, *Lahmann v. Sisters of St. Francis*, 55 Wn. App. 716, 780 P.2d 868 (1989) (instruction and special verdict form given without timely objection with verdict form expressly requiring at least 10 of the same jurors who agreed to finding defendant negligent, had to agree to the answer regarding proximate cause).

nately for KPMG, the verdict, although seemingly inconsistent, complied with the instruction it originally proposed. It was the law of the case and there was no error.

■ ESCA's verdict. KPMG asserts the trial court erred in denying its motion for a directed verdict. KPMG contends there was insufficient evidence of ESCA's damages based on the theory under which it was attempting to recover.[14] We agree because the proof of the damages was speculative and self-serving at best.

■■ Sufficiency of the evidence to prove damages must be established with enough certainty to provide a reasonable basis for estimating it.[15] Although the precise amount of damages need not be shown, damages must be supported by competent evidence in the record. To be competent, the evidence or proof of damages must be established by a reasonable basis and it must not subject the trier of fact to mere speculation or conjecture.[16]

■ ■ The goal of awarding money damages is to compensate for losses that are actually suffered. ESCA necessarily had the burden to prove its loss as a result of KPMG's conduct. The losses or damages would include those expenses ESCA would have avoided but for KPMG's negligence. But proof of damages cannot be complete

---

[14]In reviewing a trial court's decision to deny a motion for directed verdict, this court applies the same standard as the trial court. A directed verdict is appropriate if, when viewing the material evidence most favorably to the nonmoving party, the court can say as a matter of law that there is no substantial evidence or reasonable inferences to sustain a verdict for the nonmoving party. *Hume v. American Disposal Co.*, 124 Wn.2d 656, 667, 880 P.2d 988 (1994) (citing *Industrial Indem. Co. of N.W., Inc. v. Kallevig*, 114 Wn.2d 907, 915-16, 792 P.2d 520, 7 A.L.R.5th 1014 (1990)), *cert. denied*, 513 U.S. 1112 (1995).

[15]*See Lewis River Golf, Inc. v. O.M. Scott & Sons*, 120 Wn.2d 712, 717, 845 P.2d 987 (1993) (citing *Larsen v. Walton Plywood Co.*, 65 Wn.2d 1, 16, 390 P.2d 677, 396 P.2d 879 (1964)).

[16]*Federal Signal Corp. v. Safety Factors, Inc.*, 125 Wn.2d 413, 443, 886 P.2d 172 (1994); *see also Mason v. Mortgage Am., Inc.*, 114 Wn.2d 842, 851, 792 P.2d 142 (1990) (mathematical exactness not required); *Lewis River Golf*, 120 Wn.2d at 717-18 (requirement of reasonable certainty applies more to the fact of damages than to the amount of damages).

without reasonable evidence of the value of the benefits received from these employees.[17]

The testimony supporting the claim came from Debra Beatenbough, ESCA's director of finance. At the time the employees were released, Beatenbough was the assistant controller of ESCA. She explained the method used by the company to calculate its damage figures. In preparing the calculation she assumed that the actions taken by the ESCA board in May of 1990 to reduce expenses for the company would have taken place four months earlier had the WSL contract revenue not been included in the 1988-89 financial statements. She testified to claimed damage amounts by category.[18]

As to claimed compensation savings, Beatenbough looked to the individuals who were released in May of 1990. She did not look to the particular functions the employees were performing within ESCA, and did not calculate any value to the company from the work done while still there. Initially, Beatenbough indicated she was not prepared to testify that the work done by these employees was totally worthless to ESCA. Under cross examination by KPMG's defense counsel, she testified:

A: I maintain that the value that they provided during that time period was — ESCA could have done without. It was of no significant value to us.

Q: So you're saying that these, in effect, were worthless to ESCA all of a sudden?

A: Well, if you want to interpret it that way, yes.

Q: But you don't even know what they were doing at ESCA?

A: I know that we were able to do without them subsequent to May 5th.

---

[17]*See Bennett v. Maloney*, 63 Wn. App. 180, 185-86, 817 P.2d 868 (1991) (reversing a trial court's denial of a directed verdict where plaintiff failed to offer competent evidence of the reasonable value of the security interest actually received), *review denied*, 118 Wn.2d 1011 (1992).

[18]Those important to the appeal are claimed compensation savings of $971,700 and excess variable expenses of $434,400.

Beatenbough was also questioned about the calculation of the "excess variable expenses" category of ESCA's claim. She indicated it was composed of travel and entertainment expenses, paid in part to generate future sales, and seminar and training costs. But Beatenbough could not testify about which employees went to the seminars and training or whether the people attending them still worked for the company or not. On redirect Beatenbough indicated it was impractical for her to attempt to quantify the residual value of the seminars or other expenses paid by ESCA. Ms. Beatenbough's testimony was the sole basis for ESCA's damage claim.

ESCA failed to prove any residual value received as a result of the excess salary and expenses incurred. Under *Federal Signal Corp.*, subjective self-serving characterizations of property like "worthless" are insufficient to establish "residual value."[19] Similarly, Beatenbough's testimony is like that in *Federal Signal Corp.* and is patently insufficient to establish a claim for damages.

In *Bennett v. Maloney*, [20] there was no proof of the value of the residual second deed of trust which the "aggrieved party" retained. In reversing the trial court, we held that proper damages could not be ascertained because there was no evidence of the value of the second deed of trust. Here, Beatenbough concluded that the value of the services was worthless to the company, or at most of minimal value. Unlike in *Bennett*, ESCA was not left with any tangible interest or property, yet the basic principle is the same; the evidence or proof of damages must be established by a reasonable basis, and must not subject the trier of fact to mere speculation or conjecture. ESCA did not meet its burden of proving its damages. As such the trial court erred in failing to grant KPMG's motion for a directed verdict. We reverse the verdict in favor of ESCA.

Seafirst's Cross Appeal. Seafirst claims the trial

[19]*Federal Signal Corp.*, 125 Wn.2d at 439; *Salter v. Heiser*, 39 Wn.2d 826, 835, 239 P.2d 327 (1951).

[20]*Bennett*, 63 Wn. App. at 186.

court improperly limited its claimed loss to $2.5 million instead of a loss in excess of $4 million by ruling that Seafirst was not entitled to rely on the "draft" audit for any purpose. We reject the argument. After review of the record, we agree with the trial court's ruling granting KPMG's motion for partial summary judgment. At the May 11, 1995 hearing, the trial court stated:

> No evidence contradicts the Jurgensen declaration, which states that KPMG did not know, nor should it have known, that its draft audit, stamped on each copy and on each page, "Preliminary draft, for discussion purposes only," and distributed privately to limited members of the ESCA financial staff, would be circulated outside ESCA, let alone used by Sea-First as a basis of increasing ESCA's line of credit.

The "draft" audit was clearly marked "for discussion purposes only" and accordingly Seafirst had no basis to rely on it to make business decisions. Seafirst's alleged reliance on the document to make significant financial decisions is unjustifiable.[21] Finally, under § 552(2)(a) of the RESTATEMENT, Seafirst was outside the class of third parties who could claim reliance on the draft. The trial court did not err in granting the motion for partial summary judgment.

The case is affirmed in part, reversed in part, and remanded for entry of orders consistent with this opinion.

KENNEDY, A.C.J., and AGID, J., concur.

Review granted at 133 Wn.2d 1029 (1998).

---

[21]*Barnes v. Cornerstone Invs., Inc.*, 54 Wn. App. 474, 773 P.2d 884, *review denied*, 113 Wn.2d 1012 (1989).