# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| FRANKLIN R. LACY,<br><br>    Appellant,<br><br>   v.<br><br>RICHARD RASMUSSEN, BETTY J.<br>RASMUSSEN, RASMUSSEN WIRE<br>ROPE & RIGGING CO., RASMUSSEN<br>EQUIPMENT CO., BILL JOOST,<br>LANDMANN WIRE PRODUCTS,<br>WEISNER, INC., WEISNER STEEL<br>PRODUCTS, INC.,<br><br>    Respondents. | No. 71894-1-I<br><br>DIVISION ONE<br><br><br>UNPUBLISHED OPINION<br><br><br>FILED: July 20, 2015 |

SPEARMAN, C.J. — Franklin Lacy filed this action alleging injuries and damages resulting from defective shackles that he used to secure his patented rough water dock system. The trial court dismissed Lacy's claims, primarily on the basis that they were time barred. Because Lacy fails to demonstrate any error, we affirm.

## FACTS

Franklin Lacy appeals from trial court orders dismissing his claims against two sets of defendants: (1) Rasmussen Wire Rope & Rigging Co., Rasmussen Equipment Co., Richard Rasmussen, Betty J. Rasmussen, and Bill Joost (collectively Rasmussen); and (2) Weisner, Inc., Weisner Steel Products, Inc., and Landmann Wire Rope Products, Inc. (collectively Weisner and Landmann).

Lacy patented a rough water dock system in 1991. In 1995, he contacted Rasmussen Wire Rope & Rigging Co. and spoke with Bill Joost. Lacy ordered double braided nylon line and hot-dipped galvanized shackles from Rasmussen to

secure the dock system. Lacy acknowledged the invoice stated that it was subject to the conditions set forth on the reverse side and that he read the terms and conditions.

Lacy installed the dock system, which originally consisted of five docks, on his Friday Harbor property in 1996. Lacy spent about six months each year in Friday Harbor and the remainder of the year in Hawaii.

In 2002, Lacy determined that the galvanized shackles were not lasting as long as he hoped and switched to type 304 stainless steel shackles that he purchased from Rasmussen. In 2003, the dock failed, causing three sections to separate and land on the rocks. In his deposition, Lacy acknowledged that the shackles were the cause of the failure:

> The only thing it could be is the shackles. You have the intact eye bolt under the dock, and it hadn't gone anywhere, other than going with the dock. . . . So it didn't deteriorate at all. It's in perfect shape. And you are able to check enough of the dock lines that you can find to see that they haven't deteriorated. You find the end of it that would attach to the shackle. And so if that side's good and if the other side's good, what you're coupling has to be the problem.[1]

The dock system failed again in 2004, causing additional damage. Lacy repaired the system using only four docks.

In about early 2005, Lacy noticed that the dock system was moving out of place. Lacy injured his knee while attempting to prevent further damage. After this

---

[1] Clerk's Papers (CP) at 996.

incident, Lacy reinstalled only one section of the dock, leaving the remaining four sections on the beach.

In the summer of 2006, the remaining dock rotated, but did not release. Upon inspection, Lacy noticed that the shackles were missing.

In the summer of 2007, Lacy noticed essentially the same problem, but he secured the dock with extra lines to prevent a release. When he returned in the summer of 2008, Lacy again noticed that the shackles had failed, although the reserve lines had held the dock in place. At this time, a diver discovered a "shackle with the eaten-away hasp"[2] hanging on one of the dock's eye bolts. Following this discovery, Lacy soaked the remaining shackles in salt water. By June 2009, the shackles had dissolved.

Beginning in 2008, Lacy purchased type 316 stainless steel shackles from Rasmussen. He observed no problems with those shackles from 2008 to 2013.

Lacy filed this action for damages against Rasmussen on August 11, 2010. The complaint alleged claims for misrepresentation, breach of implied warranty, negligence, damages to patent, reckless and constructive endangerment, and constructive sabotage. Among other things, Lacy alleged that Rasmussen had misrepresented the quality of the shackles, causing approximately $25,000,000 in damages.

---

[2] CP at 1010.

On August 26, 2011, the trial court granted Lacy leave to add additional defendants, including Weisner and Landmann. Lacy alleged that Weisner and Landmann were in the "chain of ownership and purchase of the shackles."[3]

Lacy served a purported summons and complaint on Weisner and Landmann in late January 2012. On May 7, 2012, both Weisner and Landmann moved to dismiss under CR 12(b)(6).

Lacy did not file an amended complaint until May 21, 2012. He then filed an "expanded amended complaint" on May 24, 2012, and a motion to "approve the expanded amended complaint" on May 25, 2012.

Following a hearing on June 15, 2012, the trial court granted Weisner's and Landmann's motions to dismiss, concluding that Lacy's claims were barred by the statute of limitations. The trial court denied the motion to approve the expanded amended complaint as moot.

On March 14, 2014, the trial court granted Rasmussen's motion for partial summary judgment and dismissed the majority of Lacy's claims. The trial court concluded that (1) Lacy's claims for shackles purchased from Rasmussen before August 11, 2006, were time barred; (2) Lacy's claims for consequential damages and lost profits were precluded by the terms of the sales contract and the absence of any admissible supporting evidence; (3) Lacy's tort claims for events occurring prior to August 11, 2007, were time barred; (4) Lacy's tort claims for the 2008 failure were

---

[3] CP at 92.

precluded by the independent duty doctrine; and (5) the Rasmussen defendants did not owe Lacy a fiduciary duty.

The court allowed Lacy to amend his complaint to add additional claims, including alleged violations of the Consumer Protection Act and the Uniform Commercial Code. Lacy later moved to amend the partial summary judgment order to a final order of dismissal, explaining that the trial court had already effectively denied all of his claims. On June 30, 2014, the trial court granted the motion and dismissed all of Lacy's claims with prejudice. The court awarded Rasmussen approximately $64,000 in attorney fees.

## DISCUSSION

Much of Lacy's briefing on appeal is rambling, disjointed, and unsupported by any coherent legal theory or citation to the appellate record or relevant authority. The briefs also contain numerous violations of RAP 10.3(a)(6), which requires a party to provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6).

In lieu of legal argument on appeal, Lacy repeatedly attempts to incorporate pleadings directed to the trial court by inviting this court to review hundreds of pages of the clerk's papers. This we decline to do. See In re Guardianship of Lamb, 173 Wn.2d 173, 183, 265 P.3d 876 (2011) (party waives issue not fully argued in appellate brief; Washington courts have repeatedly rejected attempts by litigants to

incorporate by reference arguments raised only in the trial court). Nor will we search through the record for evidence relevant to a litigant's arguments. See Mills v. Park, 67 Wn.2d 717, 721, 409 P.2d 646 (1966).

In the trial court and on appeal, Lacy has blamed others for his inability to follow court rules and clear legal authority. But even though Lacy is representing himself pro se, we must hold him to the same standards as an attorney. See In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). Consequently, the failure to comply with all procedural rules may preclude review. Id.

Standard of Review

To the extent that Lacy is challenging the trial court's dismissal of his claims on summary judgment, our review is de novo. We consider the materials before the trial court and construe the facts and inferences in the light most favorable to the nonmoving party. Hubbard v. Spokane County, 146 Wn.2d 699, 706-07, 50 P.3d 602 (2002). Summary judgment is proper only if there is no genuine issue of material fact. CR 56(c); Hubbard, 146 Wn.2d at 707.

Lacy appears to raise the following issues on appeal:

Sales of Shackles Before 2006

Relying on Architechtonics Constr. Management, Inc. v. Khorram, 111 Wn. App. 725, 45 P.3d 1142 (2002), Lacy asserts that the statute of limitations did not commence until June 2009 when he discovered that his remaining shackles had dissolved in buckets of salt water. But in Washington, Article 2 of the Uniform

Commercial Code (UCC) generally governs the sale of goods. See RCW 62A.2-102 (UCC covers all "transactions in goods"). The UCC statute of limitations provides that "[a]n action for breach of any contract for sale must be commenced within four years after ... the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." RCW 62A.2–725(1)(2) (emphasis added). Our Supreme Court has rejected the analysis in Architechtonics and held that, absent exceptions not applicable here, the discovery rule does not apply to breach of contract claims. 1000 Virginia Ltd. P'ship v. Vertecs Corp., 158 Wn.2d 566, 578-83, 146 P.3d 423 (2006). Because Lacy filed this action on August 10, 2010, the trial court did not err in concluding that contract claims accruing before August 11, 2006 were time barred.

Events Occurring Before August 11, 2007

Lacy alleged claims against Rasmussen for breach of warranty, misrepresentation, and negligence, all arising out of Rasmussen's sale of the defective shackles. In Washington, the Washington Product Liability Act (WPLA), chapter 7.72 RCW, is the exclusive remedy for product liability claims. Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 322–23, 858 P.2d 1054 (1993); Wash. Water Power Co. v. Graybar Elec. Co., 112 Wn.2d 847, 853, 774 P.2d 1199, 779 P.2d 697 (1989). A product liability claim under the WPLA "preempts any claim or action that previously would have been based on any 'substantive legal theory except fraud, intentionally caused harm or a claim or action brought under the

consumer protection act, chapter 19.86 RCW.'" Bylsma v. Burger King Corp., 176 Wn.2d 555, 559, 293 P.3d 1168 (2013) (quoting RCW 7.72.010(4)).

The statute of limitations under the WPLA is three years. RCW 7.72.060(3). Lacy's tort claims for damages and injuries occurring before August 11, 2007, are therefore barred.

Lacy maintains that the discovery rule tolled the statute of limitations until June 2009, when he determined that the shackles were dissolving in salt water. But under the discovery rule, the plaintiff must show that he or she could not have discovered the relevant facts earlier. Giraud v. Quincy Farm and Chemical, 102 Wn. App. 443, 449, 6 P.3d 104 (2000). "'[W]hen a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm. The plaintiff is charged with what a reasonable inquiry would have discovered.'" 1000 Virginia Ltd. P'ship, 158 Wn.2d at 581 (quoting Green v. A.P.C., 136 Wn.2d 87, 96, 960 P.2d 912 (1998)).

Here the evidence was undisputed that Lacy knew the shackles were repeatedly failing as early as 2003. Lacy provides no evidence or plausible argument suggesting why, after exercising due diligence, he could not have determined the cause of the failure. Lacy fails to demonstrate any material factual dispute regarding application of the discovery rule to the events occurring before August 2007.

Lacy appears to allege that the statute of limitations was also tolled by fraudulent concealment. See generally Giraud, 102 Wn. App. at 452. But because

he offers nothing more than conclusory allegations to support this claim, we decline to consider it.

Consequential Damages

Lacy contends that the trial court erred in dismissing his claims for consequential damages and lost profits. His primary argument appears to be that the defective shackles prevented him from licensing his patent to dock builders.

Although Lacy need not establish the precise amount of damages, "the evidence or proof of damages must be established by a reasonable basis and it must not subject the trier of fact to mere speculation or conjecture." ESCA Corp. v. KPMG Peat Marwick, 86 Wn. App. 628, 639, 939 P.2d 1228 (1997). Lacy acknowledged that all of his income since 2000 has been from investments. On appeal, he fails to identify any admissible evidence in the record suggesting that the defective shackles prevented him from marketing his patent or otherwise supporting his claims for consequential damages and lost profits resulting from the defective shackles. See Tacoma Auto Mall, Inc. v. Nissan North America, Inc., 169 Wn. App. 111, 135, 279 P.3d 487 (2012) (to establish lost profits, parties must demonstrate that they would have earned the claimed profits but for the defendant's breach).

A party cannot defeat summary judgment by relying solely on "conclusory allegations, speculative statements or argumentative assertions." Las v. Yellow Front Stores, Inc., 66 Wn. App. 196, 198, 831 P.2d 744 (1992). Rather, the party must identify specific, admissible evidence that demonstrates a genuine issue. Id. Lacy

failed to demonstrate a genuine factual issue as to consequential damages and lost profits.[4]

Independent Duty Doctrine

Lacy contends the trial court erred in concluding that his tort claims for damages arising from the 2008 dock failure are barred by the independent duty doctrine. Under the independent duty doctrine, "'[a]n injury' ... is remediable in tort if it traces back to the breach of a tort duty arising independently of the terms of the contract." Elcon Const., Inc. v. Eastern Washington Univ., 174 Wn.2d 157, 165, 273 P.3d 965 (2012) (quoting Eastwood v. Horse Harbor Found., Inc., 170 Wn.2d 380, 389, 241 P.3d 1256 (2010)). Our Supreme Court has directed lower courts not to apply the doctrine to tort remedies "'unless and until this court has, based upon considerations of common sense, justice, policy and precedent, decided otherwise.'" Elcon, 174 Wn.2d at 165 (quoting Eastwood, 170 Wn.2d at 417 (Chambers, J., concurring)).

In any event, however, Lacy has not presented any coherent legal argument establishing the existence and nature of Rasmussen's alleged breach of tort duties. We therefore decline to address Lacy's challenge. See Saunders v. Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989) (appellate court will decline to

---

[4] Because Lacy failed to identify a factual issue as to consequential damages, we need not address the validity of the consequential damage limitation in the parties' sales agreement.

consider issues unsupported by cogent legal argument and citation to relevant authority).

Attorney Fees

The trial court awarded Rasmussen attorney fees based on the terms and conditions of the sales invoices, which provided that the "prevailing party in any suit, or proceeding shall be entitled to recover reasonable attorney fees." In his deposition, Lacy acknowledged that when he first started purchasing items from Rasmussen, the invoice stated that it was subject to the "conditions set forth on the reverse side"[5] and that he then read the terms and conditions on the reverse side.

On appeal, Lacy contends that he was not told in advance that Rasmussen would be seeking attorney fees and that the terms and conditions were difficult to read. These contentions are irrelevant and, in any event, at odds with Lacy's own deposition testimony.

Lacy further claims that the terms and conditions applied only to the sale or rental of "equipment" and therefore did not apply to Rasmussen's sale of "goods." But Lacy makes no showing that this distinction affects the validity of the attorney fee provision, which applies to the "prevailing party in any suit."

Finally, for the first time in his response to Rasmussen's motion for attorney fees, Lacy alleged that he had written an objection to the terms and conditions on an

---

[5] CP at 1015.

invoice. But Lacy has not identified any evidence in the record supporting this assertion.

## Dismissal of Weisner and Landmann

Lacy also assigns error to the trial court's dismissal of his claims against Weisner and Landmann. He alleges that Rasmussen fraudulently concealed the identity of the new defendants and that the trial court gave him "a year to file his summons and complaint" involving Weisner and Landmann.[6] Under the WPLA, Lacy's claims against Weisner and Landmann related to the sale of the shackles were subject to the three-year statute of limitations. See RCW 7.72.060.

In attempting to add them as defendants, Lacy never identified the specific nature of Weisner's and Landmann's alleged liability. He alleged that they were in the "chain of ownership and purchase" but raised no specific allegations against them in the amended complaint.

At the June 15, 2012 hearing on the motion to dismiss, Lacy conceded that his claim arose in August 2008. He also acknowledged that he was aware of Weisner's and Landmann's identities by May 2011, well before the statute of limitations expired. Nonetheless, Lacy did not serve Weisner and Landmann with an amended summons and complaint until January 2012, after the statutory period had expired, and did not file the amended complaint until May 2012. Lacy's assertion that Rasmussen's

---

[6] Appellant's Br. at 45.

fraudulent concealment prevented timely commencement of the action is therefore meritless.

Lacy's contention that the trial court gave him a year to file the amended summons and complaint is frivolous. At the August 26, 2011 hearing on Lacy's motion for leave to add the new defendants, Lacy asked about setting the trial date and a discovery cut off deadline. The court informed Lacy that the trial date had not yet been set and that there was no discovery cut off date. At this point, the court observed that "if there's no action at all, just nothing happens for 12 months,"[7] the court clerk would send out a 30-day dismissal notice. Nothing in the court's comments referred to the filing of an amended complaint.

Remaining Allegations

Lacy's remaining allegations, including assertions that Rasmussen doctored evidence and breached a fiduciary duty and that the trial court took "shortcuts"[8] and failed to consider all of his arguments and evidence, are irrelevant, unintelligible, or too conclusory to address. Lacy has raised numerous new allegations and arguments in his reply brief. An issue "raised and argued for the first time in a reply brief is too late to warrant consideration." Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (citing In re Marriage of Sacco, 114 Wn.2d 1, 5, 784 P.2d 1266 (1990)).

---

[7] Verbatim Report of Proceedings (VRP) (08/26/11) at 7.

[8] Appellant's Br. at 1.

No. 71894-1-I/14

## Attorney Fees on Appeal

As the prevailing party, Rasmussen is entitled to an award of attorney fees on appeal. The request is granted. See RAP 18.1(a).

Weisner and Landmann request an award of attorney fees for a frivolous appeal. See RAP 18.9(a). An appeal is frivolous "if the appellate court is convinced that the appeal presents no debatable issues upon which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal." In re Marriage of Foley, 84 Wn. App. 839, 847, 930 P.2d 929 (1997). That standard is satisfied here. Not only has Lacy mischaracterized some of the facts underlying his attempts to add Weisner and Landmann as defendants, but he made no reasonable attempt to challenge the legal basis for the trial court's decision.

Rasmussen, Weisner and Landmann are awarded attorney fees on appeal, subject to compliance with RAP 18.1(d).

Affirmed.

Spelman, C.J.

WE CONCUR:

-14-